## Dettmer S. Biller, Plaintiff-Appellant, v. Allis Chalmers Manufacturing Company, a Corporation, Defendant-Appellee.

### Gen. No. 11,549.

Second District, Second Division.

February 8, 1962.

Bull, Ludens & Potter, of Morrison, and Louis J. Pignatelli, of Rock Falls, for appellant.

Welsh & Welsh, of Rockford, for appellee.

CROW, J.

The plaintiff, Dettmer S. Biller, a farm employee of one Ward Hartshorn, brought an action against the defendant, Allis Chalmers Manufacturing Company, a corporation, to recover for personal injuries allegedly sustained in and about the operation of an Allis Chalmers WD–45L–P Tractor, manufactured by the defendant. The defendant moved to dismiss the amended complaint and the motion was allowed. The plaintiff elected to abide by the amended complaint and the court entered a final judgment of dismissal of the suit. From that judgment the plaintiff appeals.

The amended complaint alleges that (1) on or about March 21, 1959 the plaintiff was employed as a farm

laborer by Ward Hartshorn on a farm; (2) at all times mentioned the plaintiff was in the exercise of reasonable care for his own safety; (3) the defendant is and has been for many years engaged in the business of manufacturing and selling farm machinery for use on farms such as the one upon which the plaintiff was employed; (4) approximately eight years ago Ward Hartshorn purchased an Allis Chalmers WD–45L–P Tractor manufactured by the defendant, from an authorized dealer; (5) the tractor was designed and constructed to use, and did use, a liquified petroleum gas, to-wit, propane, for fuel, which gas was stored under pressure of approximately 150 pounds per square inch in a tank furnished by the defendant as an integral part of the tractor and located on the front of the tractor, and, due to the characteristics of liquified petroleum as hereinafter set forth, the tractor, while so fueled, became and remained an inherently dangerous instrument; (6) on the date indicated, the plaintiff, in the exercise of his duties as a farm laborer was engaged in filling the fuel tank on the tractor on the farm, and was pumping the fuel into the tank from a bulk storage tank by means of a hand pump; (7) following that filling operation the plaintiff was in the process of disconnecting the fuel hoses from the tank when, due to a failure of a valve in the tank to operate properly, the fuel escaped from the tank and exhausted onto the gloved hands of the plaintiff; (8) the fuel is inherently dangerous in that it has a boiling point of minus 41° Fahrenheit at atmospheric pressure, and upon returning to such atmospheric pressure from the higher pressure under which it was stored in a liquid status in the tractor fuel tank, the fuel vaporized and absorbed large amounts of energy in the form of heat from the hands of the plaintiff thereby freezing his hands and causing the plaintiff to suffer severe and permanent injuries and damages; (9) the defendant knew, or, in the exer-

49

cise of reasonable care, should have known that the farm tractor would be used and fueled by farm laborers such as the plaintiff who were unacquainted with and uninformed of the dangerous characteristics of the fuel, and knew, or should have known, that a failure of the valve in question to operate properly would result in injury to such a person so unacquainted with the dangerous qualities of the fuel; (10) because of the dangerous characteristics of the tractor when fueled under pressure with liquefied petroleum gas as aforesaid, there was a duty upon the defendant to affix to the fuel tank or to the tractor a conspicuous warning of said dangers for the benefit of the plaintiff and other persons uninformed of said dangers; (11) disregarding that duty, the defendant negligently failed to affix to the tank or tractor said warning, or any warning whatsoever, of the dangerous characteristics of the tractor when so fueled as aforesaid; and (12) as a direct and proximate result of that negligence of the defendant, the plaintiff was injured and damaged in one or more of the following respects:

a. His hands were frozen necessitating the amputation of all his fingers on his left hand and causing severe, painful and permanent injury to the tissues, membranes, muscles, nerves, blood vessels and skin of both of his hands, thumbs and remaining fingers.
b. His ability to earn a living has been permanently damaged.
c. He has incurred heavy medical, doctor and hospital expenses in an effort to be cured of said injuries and will continue to incur such expenses for such purposes.
d. He was incapacitated for a long period of time and thereby lost large sums of money which he otherwise would have earned during said period.

50

e. He suffered severe pain and will continue to suffer pain for a long period in the future.

The defendant's motion to dismiss alleged that as a matter of law the amended complaint fails to state a cause of action, there is no legal duty owed by the defendant to the plaintiff to warn of the qualities of propane gas, and the theory upon which liability is predicated is not readily understandable by a reading of the complaint.

The plaintiff's theory is that the amended complaint states a good cause of action against the defendant, the tractor, under the circumstances alleged, was inherently dangerous, the defendant owed a duty to the plaintiff to warn him of the dangers inherent in the operation of its product, the duty to warn exists even though the product be perfectly made, the duty to warn extends to this plaintiff, the defendant negligently failed so to warn the plaintiff, his injuries were proximately caused by that negligence, and there were no independent intervening causes terminating the liability of the defendant.

The defendant's theory is that the amended complaint fails to state a cause of action, the defendant, manufacturer of a tractor sold to the plaintiff's employer approximately 8 years prior to the plaintiff's injuries, owed no duty to the plaintiff under the facts alleged, a manufacturer owes no duty to a person other than the original purchaser of the product unless the product is inherently dangerous or becomes so because negligently manufactured, if there was a duty here to warn the amended complaint shows that the breach of such duty was not the proximate cause of the accident, and if there was a legal duty here to warn the failure of the employer of the plaintiff. and the supplier of the propane gas to warn of the propensities of propane gas would be an independent intervening cause terminating liability.

51

■■ On this motion to dismiss, the well pleaded alleged facts of the amended complaint and the reasonable inferences and intendments therefrom are, of course, to be taken as true. The burden of proving the alleged facts rests with the plaintiff, as usual, if there is a trial on the merits. The only question now presented is whether the amended complaint states a good cause of action. There is nothing in the amended complaint, as we see it, that alleges negligence in the defendant's manufacture, as such, of the tractor. Nor is there any allegation of privity of contract between the plaintiff, the employee of the vendee, and user, and the defendant, the manufacturer. We are, therefore, confronted with the propositions of whether under the allegations there is any duty owed by the defendant, and, if so, what duty, whether this particular plaintiff comes within the class of persons to whom any such duty extends, whether there is alleged a tortious or negligent breach of duty, and whether there is alleged an injury proximately caused thereby.

We believe the Restatement of the Law of Torts, Vol II, Secs 388, 394 and 396 of the American Law Institute, state, in summary form, the chief principles of substantive law here applicable. Sections 388, 394, and 396 are as follows:

Sec 388:

"One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows, or from facts known to him should realize, that the chattel is or is likely to

52

be dangerous for the use for which it is supplied;

(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

Sec 394:

"The manufacturer of a chattel, which he knows to be, or to be likely to be, dangerous for use, is subject to liability as stated in Sections 388 to 390."

Sec 396:

"A manufacturer of a chattel is subject to liability under the rules stated in Sections 394 and 395, although the dangerous character or condition of the chattel is discoverable by an inspection which the vendor or any other person is under a duty to the person injured to make."

The Illinois cases have, generally, followed and applied those principles or the substance thereof: Cf. Rotche v. Buick Motor Co. (1934) 358 Ill 507, 193 NE 529 (plaintiff,—purchaser and user; defendant,—manufacturer; product,—automobile); Davidson v. Montgomery Ward & Co. (1912) 171 Ill App 355 (plaintiff,—employee of purchaser and user; defendant,—manufacturer; product,—saw frame and balance wheel); North American Restaurant etc. v. McElligott (1906) 129 Ill App 498, affd 227 Ill 317, 81 NE 388 (plaintiff,—user and operator; defendant,—owner; product,—engine, machinery, and appliances); Colbert v. Holland Furnace Co. (1928) 333 Ill 78, 164 NE 163 (plaintiff,—wife of purchaser and user; defendant,—

vendor and installer; product,—cold air shaft floor grating); Lill v. Murphy Door Bed Co. et al. (1937) 290 Ill App 328, 8 NE2d 714 (plaintiff,—tenant and user; defendant,—manufacturer and vendor to landlord; product,—an in-a-door bed); Lindroth v. Walgreen Co. and Knapp-Monarch Co. (1949) 338 Ill App 364, 87 NE 2d 307, affd 407 Ill 121, 94 NE2d 847 (plaintiff,—minor son of purchaser and user; defendants,—the manufacturer and the vendor; product,—a vaporizer); Beadles et al. v. Servel Incorporated et al. (1951) 344 Ill App 133, 100 NE2d 405 (plaintiffs,—users; defendant,—manufacturer; product,—refrigerator).

For example, in Beadles et al. v. Servel Incorporated, supra, the Court reversed and remanded a judgment allowing the defendant's motion to strike a second amended complaint and dismissing the suit, after the plaintiffs elected to abide by the amended complaint, and said, pp 139–140, 144, 144–145:

> ". . . Plaintiffs sufficiently alleged in Count I that they were injured by the negligent construction of the refrigerator so as to constitute such refrigerator an inherently dangerous device, and in Count III set forth that defendant's refrigerator in normal operation was an inherently dangerous machine. It is upon whether these allegations state a cause of action that this appeal must be decided.
>
> This Court is thus faced with the question involving the scope of a manufacturer's liability, concerning which controversy has raged since the celebrated case of Winterbottom v. Wright, 10 M & W 109, was decided. . . .
>
> In Illinois the general rule is that manufacturers are not liable in damages to persons with whom they have no contractual relations for personal

injuries sustained by such persons because of the negligent manufacture of the former's product. Rotche v. Buick Motor Co., 358 Ill 507, 513.

To this rule there are three well recognized exceptions: 1. Where the act of negligence of a manufacturer is with reference to some article imminently dangerous to the life or health of humankind; 2. Where an owner commits an act of negligence with reference to some appliance which causes an injury to one invited upon the owners' premises; and 3. Where one, without giving notice of its qualities, sells or delivers an article which he knows to be imminently or inherently dangerous to life or limb. Davidson v. Montgomery Ward & Co., 171 Ill App 355, 364. It is well settled that if any one of the above exceptions apply to a given case, there is no necessity of privity of contract to enable the injured person to sue the manufacturer, provided the injured person is himself within the class to which the manufacturer's duty of care applies. Lindroth v. Walgreen Co., 338 Ill App 364."

· · · · ·

"Applying this test to the refrigerator in the case at bar, we cannot hold, as a matter of law that a mechanism so designed and constructed as to, or which in ordinary operation does, give off deadly carbon monoxide gas is not an inherently dangerous instrumentality. We hold that in this regard the complaint stated a cause of action against the defendant Servel Incorporated."

· · · · ·

"In defining the class of persons to whom the manufacturer's duty runs the courts of this State have used varying expressions. Shepard v. Ken-

55

sington Steel Company, 262 Ill App 117 (the vendee and those who use the article with the permission or consent of the vendee; Lindroth v. Walgreen Co., supra, citing Wintersteen v. National Cooperage Co., 361 Ill 95 (it extends to remote and unknown persons); Davidson v. Montgomery Ward & Co., supra (any person who suffers injury therefrom).

We adopt the rule and hold that a manufacturer who makes an inherently dangerous article is liable for bodily harm caused by such article to those whom he should expect to use the chattel or to be in the vicinity of its probable use. See: Restatement of the Law of Torts, Sec 388, Comment (a)."

In Lindroth v. Walgreen Co. et al., supra, in affirming a judgment for the plaintiff, the Appellate Court said, p 387:

". . . Plaintiff concedes that as Mrs. Lindroth did not purchase the vaporizer from the manufacturer the latter did not expressly warrant the vaporizer to Mrs. Lindroth individually. Nevertheless, it cannot be doubted that defendant Knapp-Monarch Company owed a duty to plaintiff if the vaporizer was, in fact, an inherently dangerous article."

And in that same case in the Supreme Court the Court again affirmed and said, p 136:

"Appellants also urge error in the submission to the jury of the special interrogatory which reads, 'Was the vaporizer in question when used in accordance with the printed directions accompanying it in the manner and for the purpose intended, an inherently dangerous instrument?' The complaint in this case alleges that the vaporizer was

inherently dangerous and defendants denied it. It was one of the issues in the case and defendant Knapp-Monarch Company caused the jury to be instructed that before plaintiff could recover it must have been proved that the defendant knew or by reasonable care should have known the vaporizer here was a potentially dangerous instrumentality and if there were any defect in it, 'it was reasonably certain to endanger the life or limb of other persons than the purchaser when used in the manner and for the use intended.'

In view of the defendant's position in that instruction, it is hard to see how the interrogatory was so prejudicial as to require reversal. . . ."

■ ■ It is not necessarily essential to a possible liability on the part of the manufacturer that the product be imminently dangerous in and of itself, but it is sufficient, assuming the other prerequisites to liability are present, if the product be in such a condition that when put to the use and serving the very purpose for which it is bought and sold it is imminently perilous and that condition is not disclosed: Davidson v. Montgomery Ward and Co., supra. Even though a product in general be not necessarily an inherently dangerous instrumentality per se a manufacturer may possibly be liable for some subsequent injury, assuming the other prerequisites to liability are present, if the particular product may become such a dangerous instrumentality because of its particular condition and if there is negligence in some actionable manner on the part of the manufacturer: Rotche v. Buick Motor Co., supra.

■ Even though, speaking generally, a tractor as such may not be a dangerous instrumentality per se, a particular tractor or type of tractor, such as one which does not have a key locking ignition system and

57

is equipped to start without a key by the pulling out of a switch button, may be a dangerous instrumentality: Cf. Kuhn et al. v. Goedde et al. (1960) 26 Ill App2d 123, 167 NE2d 805,—the Court there holding a defendant property owner, however, not liable for an injury to the plaintiff arising out of the acts of an independent hauling contractor and operator of the tractor because of the owner's lack of knowledge, the Court saying that, p 131: ". . . we exonerate the owner in this case due to his complete lack of any knowledge, actual or constructive, of the dangerous instrumentality (tractor which was equipped to start without a key). . . ."

It cannot be seriously disputed that the storage of liquid propane gas in an underground storage tank is imminently dangerous: Paul Harris Furniture Co. et al. v. Morse et al. (1956) 10 Ill2d 28, 139 NE2d 275,— the matter there concerned being the highly explosive characteristic of the gas, and the Court holding, inter alia, that the independent excavating contractor who had dug the hole in which the tank was placed was liable for property damages by explosion and fire to nearby buildings resulting in part from his negligent cutting of certain tile leading from the hole to a sewer, causing, in part, a leakage of the gas into such buildings, and the Court there said, pp 41, 42, 43:

> ". . . The storage of gas was the dangerous thing dealt with and Walker's work was a necessary part of the installation of the tank for such storage. He, like every other person participating in that installation, was dealing with a thing imminently dangerous and thus may be held liable for damages resulting from any negligence in the performance of his work, even after its completion and acceptance.
>
> Having established that Walker was not relieved from liability by reason of his status as an inde-

pendent contractor, we further find that the evidence was sufficient to support the jury's conclusion that Walker was guilty of negligence which proximately caused or contributed to cause the plaintiffs' damages. . . . On this evidence the jury could reasonably conclude that Walker was negligent in failing to repair the cut tile or to notify either his employer or Acme of this condition, and that his negligence caused or contributed to cause plaintiffs' damages. Although Walker might not have foreseen the exact consequences of his conduct, a jury could reasonably conclude that as a reasonable man he should have foreseen that some harm would result. City of Dixon v. Scott, 181 Ill 116.

Defendant Walker errs when he argues that the Appellate Court set an improper standard of care. It was the jury, not the court, who set the standard of care and decided that a reasonable man, guided by the ordinary considerations which regulate the conduct of human affairs, would not have acted as Walker did under the same circumstances. The questions of negligence and proximate cause are ordinarily questions of fact for the jury to decide. (Ney v. Yellow Cab Co. 2 Ill2d 74, 84.)

. . . Measured by this precept it is our opinion that the conclusion reached by the jury in the instant case was justified by the evidence.

Neither can Walker excuse his own negligence on the theory that someone else was negligent. . . ."

In Blitzstein v. Ford Motor Co. (1961) 288 F2d 738, CA 5th, the plaintiff purchased an Anglia or English Ford, the gas tank was inside the trunk, there was a small crack in the gas tank, gas leaked into the

trunk, there were no openings or vents in the trunk, the gas vaporized, saturating the car, the plaintiff turned on the ignition to start it, and an explosion and fire resulted, injuring him. The Court reversed and remanded a judgment for the Ford Motor Co., the exclusive American distributor, entered upon a directed verdict. The Court held that the rule stated in the Restatement of the Law of Torts, Vol II, Sec 388, previously referred to, was correct and said, pp 743, 744:

> "We now reach the point where we think the district court erred in granting a directed verdict in favor of American Ford. The district court correctly stated the rule, quoted above, that a supplier may be liable in failing to warn a purchaser of the dangerous condition of a chattel. In this case there can be no question that the American Company knew that the gas tank of the Anglia was located in the trunk of the car. Moreover, the testimony which we briefly quote below, showed that there was no drain in the trunk floor from which gas leaking or overflowing into the trunk could escape, nor was the trunk in any way ventilated so as to allow the escape of any gasoline vapors which might accumulate. . . ."

> "We think that a jury could reasonably have found that the American Ford Company was negligent in marketing a product which was inherently dangerous, of which danger it should have been aware from its long experience in the design and manufacture of automobiles, and that American Ford failed to exercise reasonable care to inform the buying public of this dangerous condition. Because of this view, we think the court below erred when it granted a directed verdict in favor of American Ford."

And in Tomao v. A. P. De Sanno & Son, Inc. (1953) 209 F2d 544, CA 3rd, the plaintiff user was injured when a new grinding wheel manufactured by the defendant disintegrated. The defendant had attached to the wheel a cardboard blotter with blank spaces to indicate the recommended speed of operation and the test speed for the wheel but the blanks were not filled in. Its safe operational speed was 5729 r.p.m. It was being operated at 10,000 r.p.m. when it disintegrated. The plaintiff did not claim the wheel was defectively made, but that, even if carefully made, it was put out without warning as to its limitations. The Court affirmed a judgment for the plaintiff, and after referring to Carter v. Yardley and Co. (1946) 319 Mass 92, 64 NE2d 693, Massachusetts substantive law being applicable, and the Carter case applying in principle the rule stated in the Restatement of the Law of Torts, Vol II, Sec 388, previously referred to, the Court said, p 546:

> "The Carter case, of course, dealt with an article which had been negligently manufactured so that it was defective. In that respect, it differs from the present case since plaintiffs' complaint here is not that the wheel was defectively put together, but that, even if carefully made, it was put out without warning as to its limitations. That difference does not affect the result here, however, because the Carter case did away with the manufacturer's defense of lack of contractual privity and imposed a tort duty. If the manufacturer owes a duty to use due care in making his products, he owes also the companion duty to warn of the latent limitations of even a perfectly made article, the use of which, however, is dangerous if the user is ignorant of those limitations and the

61

manufacturer has no reason to believe that he will recognize the danger."

The only case referred to by the defendant to which we've not already alluded, on the proposition of whether under the allegations of this amended complaint there is any duty owed by the defendant, is Ein et al. v. Goodyear Tire etc. Co. (1959) 173 F Supp 497, DCND Ind. The complaint there alleged Ein purchased a new automobile, it was equipped with tubeless tires manufactured by the defendant, one tire later became bruised, the bruise thereafter caused a blowout and accident, and a death and injuries resulted. The Court dismissed the complaint and held, contrary to the plaintiffs' contention, that there was no duty on the defendant to warn the plaintiffs that tubeless tires when bruised are more susceptible to blowouts than tube type tires,—it had no duty to call to the plaintiffs' attention possible differences in wearing qualities between the two types of tires. There was no claim that a tubeless tire was inherently dangerous or unsafe or harmful. The Court's comment that, p 498, "There appears to be no decision by an Illinois Court holding that there is a duty to warn upon a manufacturer such as plaintiffs contend in this case," is, so far as we're advised, correct when considered in the light of the facts there alleged and the particular duty to warn there contended for, but is inapplicable to the quite different facts alleged and quite different duty to warn urged in the case at bar. The other quotation from the opinion which is referred to in the defendant's brief here is dicta and unnecessary to the decision. It is to be observed that no Illinois cases whatever are referred to in the opinion.

The defendant refers us to no Illinois cases or cases from elsewhere in support of that part of its theory to the effect that if there was a duty here to warn the amended complaint shows that the breach of such

62

duty was not the proximate cause of the accident. The amended complaint alleges, inter alia, that there was a duty upon the defendant to affix to the fuel tank or tractor a conspicuous warning—that disregarding that duty the defendant negligently failed to affix such warning—and that as a direct and proximate result of that negligence the plaintiff was injured and damaged. That there are certain other prior allegations of a general background or recitative nature some of which are not essential to the cause of action sought to be stated does not change the essential allegations which are, in substance, properly stated.

And, in support of the last part of its theory to the effect that if there was a legal duty here to warn the failure of the employer of the plaintiff and the supplier of the propane gas to warn of the propensities of propane gas would be an independent intervening cause terminating liability, the only case the defendant cites is Reddick v. General Chemical Co. (1905) 124 Ill App 31. There the plaintiff was injured while attempting to unload a tank car of sulphuric acid, the alleged negligence being in an alleged defective nipple attachment on an acid pipe extending from a dome at the top to the bottom of the interior of the car. At the close of the plaintiff's evidence a verdict was directed for the defendant and the judgment thereon was affirmed. The Court said that that accident happened because an attempt was made to unload the car contrary to the safe and customary way and in a manner dangerous to the operator and by an wholly ignorant and inexperienced employee, which circumstances were an intervening efficient cause making the negligence of the defendant, if there was any, remote and non-actionable. Aside from the disparate facts there concerned as compared with the allegations in the present case, and aside from the circumstance that that case did not arise on the plead-

ings but on the evidence at the trial and did not involve the legal sufficiency of the declaration, it need only be further observed that the things that occurred there which were held to be, under those facts, an intervening cause were the unexpected and not reasonably to be foreseen or anticipated, whereas here it appears from the allegations of this pleading that the operation and fueling of this particular tractor with liquid propane gas by this plaintiff farm laborer was to be normally expected and reasonably to be foreseen or anticipated and there is nothing in the present pleading to indicate he was negligently acting contrary to any safe or customary way or in a manner knowingly and unnecessarily dangerous to the operator.

■ ■ We cannot say, as a matter of law, at this pleading stage of the case, simply upon consideration of the amended complaint, that this liquid propane gas fueled tractor, which requires as an integral part of its mechanism and normal operation the storage under pressure in a tank thereon and use of that type of fuel and the normal and necessary filling and refueling of that tank from time to time with such fuel, an escaping part of which has the freezing characteristic alleged, is not an imminently dangerous or inherently dangerous instrumentality. It may have been. Whether it ultimately would or would not be so found in final analysis cannot and need not now be determined. It is sufficiently alleged that it was. Even were it not an imminently dangerous or inherently dangerous instrumentality in and of itself, we could not say, as a matter of law, at this stage, that, under the allegations here presented, it was not in such a condition that when put to the particular use and serving the very purpose for which it was bought and sold it was not imminently perilous. It may have been. A particular tractor or type of tractor has been, under some circumstances, considered to be a dangerous

instrumentality. And if the storage of liquid propane gas in an underground storage tank is imminently dangerous because of its highly explosive characteristic, the storage thereof under pressure in an exposed tank on the front of a tractor may be no less imminently dangerous because of its freezing characteristic upon escaping. Though the defendant might not have foreseen the exact consequences of this particular situation we cannot hold as a matter of law that a trier of the facts could not, if there were proper evidence to support the allegations, reasonably conclude that as a reasonable man the defendant should have foreseen that some harm would result. To the extent those matters involve questions of fact, and the questions of negligence, proximate cause, and contributory negligence, such are, of course, ordinarily questions for the trier of the facts to decide. Nor could the defendant excuse its negligence, if it were found to be so by the trier of the facts, on the theory that someone else also was negligent, if they were, provided the other prerequisites to liability were present, namely, proximate cause and freedom from contributory negligence. The defendant owed a duty to warn of the latent limitations of even a perfectly made tractor, the use of which, however, may be dangerous if the user is ignorant of those limitations and if the defendant had no reason to believe he would recognize the danger.

We believe that the allegations of the amended complaint sufficiently state a cause of action. The judgment is, therefore, reversed and the cause remanded with directions to deny the motion to dismiss and for further proceedings.

Reversed and remanded.

SPIVEY, P. J. and WRIGHT, J. concur.