**Sharon CRUZ, Special Administrator of the Estate of Jose M. Cruz, Deceased, for her use and the use of Edwin Lee Cruz and Joseph Cruz, Plaintiffs,**

v.

**TEXACO, INC., a corporation, Defendant Third Party Plaintiff,**

v.

**SIMPSON OIL COMPANY, Third Party Defendant.**

**Civ. No. 82–3061.**

United States District Court, S.D. Illinois, E. St. Louis Division.

July 20, 1984.

William D. Hanagan, Hanagan & Dousman, P.C., Mount Vernon, Ill., for plaintiffs.

Larry E. Hepler, Burroughs, Simpson, Wilson, Hepler, Broom & McCarthy, Edwardsville, Ill., Jack M. Short, Tulsa, Okl., for defendant Texaco.

Robert W. Cadagin, Cadagin, Cain & Tognarelli, Collinsville, Ill., for Simpson Oil.

**MEMORANDUM AND ORDER**

FOREMAN, Chief Judge:

Before the Court is a Motion for Summary Judgment filed by defendant Texaco on

June 20, 1984. In effect, defendant Texaco moves the Court to reconsider a portion of an Order of Senior Judge William G. Juergens filed August 31, 1983, in which he denied defendant Texaco's Motion for Summary Judgment as to Count 2 of the Complaint.

Jose M. Cruz was killed while driving a winch truck to transport a piece of oil field equipment known as a gear box with counterweights. The gear box and counterweights came loose from the rear end of the winch truck and swung from side to side. As a result, the winch truck left the road and turned over, resulting in the death of Jose Cruz. Texaco sold the winch truck to Simpson Oil Company on June 3, 1980. In Count 2, plaintiffs allege Texaco negligently failed to warn the deceased that the winch truck should not be used at highway speeds when heavy objects are suspended at the rear of the truck. Texaco moves for judgment in its favor arguing (1) Texaco did not have a duty to warn the deceased because the alleged dangerous condition was understood by, and obvious to, the deceased's employer; and (2) Texaco is not liable to plaintiffs because the truck was sold to Simpson Oil Company on an "as-is" basis.

I

While there is no doubt that liability can be imposed in Illinois under a negligence theory for failure to warn, *Kirby v. General Paving Co.*, 86 Ill.App.2d, 453, 229 N.E.2d 777 (4th Dist.1967), the scope of the duty has not been adequately defined. *See Manning v. Ashland Oil Co.*, 721 F.2d 192, 193 (7th Cir.1983). For an analytical framework, Illinois courts have adopted Section 388 of the Restatement (Second) of Torts:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for use it is supplied if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

(c) fails to exercise reasonable care to inform them of its dangerous condition or the facts which make it likely to be dangerous.

*See Baylie v. Swift & Company*, 27 Ill. App.3d 1031, 327 N.E.2d 438, 447 (1st Dist. 1975). Both parties find solace in this language. Texaco argues plaintiffs have not satisfied subpart (b) since Texaco had every reason to believe the decedent would realize the dangerous condition because the decedent's employer realized the danger. Plaintiffs point out § 388 specifically refers to those who "use" a chattel and not to those who purchase the item.

Cases construing § 388 have held that a manufacturer or a supplier need not warn the ultimate user in every case that a duty to warn is present. For instance, in *Jacobson v. Colorado Fuel and Iron Corporation*, 409 F.2d 1263 (9th Cir.1969), plaintiff's decedent was killed when a steel strand manufactured by defendant broke, and plaintiff contended the decedent was inadequately warned of the danger of overstressing the strand. In *Jacobson*, the decedent was a foreman who performed his job under the direction of superiors. One of those superiors, the production manager, admitted knowledge of the danger. The Court held:

Decedent's employer and its supervising personnel should have known and actually did know the dangers inherent in the *use* of defendant's product in the hold-down device. Any breach of duty owed to the decedent with the resultant strict tort liability, if any, was the liability of decedent's employer and supervising personnel and not the liability of defendant....

There is no duty to warn those who simply follow the directions of the engi-

neers or technicians, or to put it differently, there is no duty of a supplier of chattel to foresee that the engineers or technicians will fail to follow warnings given or to employ knowledge possessed. *Id.* at 1272–73.

Courts have focused on the use of the product that caused the injury when determining whether a warning to an employer or other third party is sufficient to insulate a supplier from liability for an injury to a user of the product. As illustrated in *Jacobson*, when the employer or third party is directing the use of the product, a warning to the employer has been sufficient. For example, in *Hopkins v. E.I. Dupont*, 212 F.2d 623 (3rd Cir.), *cert. denied*, 348 U.S. 872, 75 S.Ct. 108, 99 L.Ed. 686 (1954), the Court held the manufacturer of dynamite did not have a duty to warn an employee about potential danger in the use of dynamite where blasting operations were supervised by foremen who knew of the danger. *See also Marker v. Universal Oil Company*, 250 F.2d 603 (10th Cir.1957). However, when a product is supplied directly to the user, and it is used without direction or supervision, courts have required the supplier to attach a warning on the product itself. For instance, in *Jackson v. Coast Paint and Lacquer Company*, 499 F.2d 809, 812–814 (9th Cir.1974), the court imposed on the paint manufacturer the duty to warn the ultimate user of potential dangers in the use of the paint. The court reasoned that the act of opening and using paint is not usually directed by an employer or supervisor. Thus, the fact that the painting contractor may have known of the danger was irrelevant to the court. The *Jackson* court relied heavily on *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121, 130–31 (9th Cir.1968) where the court held that in a case of a prescription drug, normally a warning to the physician is sufficient. However, if the drug is distributed without the intervening supervision of a physician, a direct warning to the patient was required.

The few cases in Illinois which involve a warning to an employer or other third party have reached decisions consistent with *Jacobson* and *Jackson*. In *Biller v. Allis Chalmers Manufacturing Company*, 34 Ill.App.2d 47, 180 N.E.2d 46 (2d Dist.1962), a tractor manufacturer had a duty to warn a farm laborer of the dangers involved with refueling the tractor with propane gas. Although the court did not directly address why a warning to the employer would be insufficient, the routine task of refueling a tractor would not normally be supervised and, thus, the employer's knowledge would be irrelevant. However, in *McKay v. Upson-Walton Company*, 317 F.2d 826 (7th Cir.1963), a manufacturer of a block and hook did not have a duty to warn the ultimate user of the machine's 2 and ½ ton capacity where the capacity was contained in a catalogue furnished to the employer. The court distinguished *Biller* and held that the manufacturer had no duty to anticipate that the instructions in the catalogue would be carelessly disregarded.

## II

Turning to the evidence, the Court must decide whether a material issue of fact remains as to whether decedent's employer knew about the danger created when the loaded winch truck is driven too fast. A second factual issue is whether the employer was sufficiently involved in directing the use of the truck to release Texaco from any duty to warn the decedent directly. Of course, the burden is on Texaco to show there is no issue of material fact in dispute. *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th Cir.1973).

■ It is abundantly clear from the deposition evidence submitted that decedent's employer, Richard Simpson, was knowledgeable about how to use winch trucks and he fully understood the danger of driving a loaded truck at highway speeds. Mr. Simpson also knew that if the load began to sway that the truck should be stopped immediately. Mr. Simpson built, repaired and maintained these trucks and he testified he did not need any advice as to how to operate the truck from Texaco. Since a purpose of a warning is to apprise a party

of a danger of which he is not aware, Texaco did not owe Simpson a duty to warn. *Kirby v. General Paving Company, supra,* at 779.

■ The evidence also reveals that operating a winch truck was a complex procedure that involved specific training. Mr. Simpson delegated the training of decedent to his more experienced employees, primarily Mark Berkaur (Simpson's deposition at 27–1). Given the fact that the operation of a winch truck involved specific training, the Court finds Texaco is entitled to rely on Mr. Simpson to warn his employees about the inherent dangers involved in operating the truck. This case is analogous to *Jacobson* and *Hopkins* where a warning to the employee was not required because a supervisor with knowledge of the danger was directing the work. The Court finds that Mr. Simpson's knowledge of the danger of driving the winch truck too fast, coupled with decedent's training by Simpson's employees, removes any duty of Texaco to warn the decedent directly.

Accordingly, Texaco's Motion for Summary Judgment on Count 2 is GRANTED. Since Count 1 was dismissed in a prior Order of this Court, the Clerk of Court is hereby ORDERED to enter judgment for defendant Texaco and against plaintiffs.

IT IS SO ORDERED