**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 12 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SHARON STALEY, individually and as
representative of the Estate of Ronald
Eugene Staley; ROBERT STALEY,
KAREN ALEJANDRO,

   Plaintiffs-Appellants,

and

TRAVELERS INDEMNITY
COMPANY,

   Plaintiff-Intervenor,

  v.

BRIDGESTONE/FIRESTONE, INC.,
a corporation,

   Defendant-Appellee.

No. 95-1265

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 93-Z-1527)

---

Aaron N. Woods (John C. Risjord and Randy W. James, also of Risjord & James,
Overland Park, Kansas; and Glenn S. Pressman of Melat, Pressman, Ezell & Higbie,
Colorado Springs, Colorado, with him on the briefs) for Plaintiffs-Appellants.

Kenneth D. Upton, Jr. (Michael L. Noland, also of Noland, Upton & Leibrock, Oklahoma City, Oklahoma; R. Eric Peterson of White & Steele, Denver, Colorado; and John C. Niemeyer of Niemeyer, Alexander & Austin, Oklahoma City, Oklahoma, with him on the brief) for Defendant-Appellee.

————————————

Before **HENRY, LOGAN** and **BRISCOE**, Circuit Judges.

————————————

**LOGAN**, Circuit Judge.

————————————

Ronald Eugene Staley died while installing new tires on a road grader when a multipiece tire and rim assembly explosively separated. Goodyear manufactured the rim of the tire and the side ring; Bridgestone/Firestone, Inc. (Firestone) manufactured the lock ring. Staley worked for Brad Ragan, Inc., a wholly owned subsidiary of Goodyear; both it and Goodyear were Staley's workers' compensation employers and thus immune from damages claims. In this diversity suit by Staley's estate, widow, and children against Firestone for negligence, defective design and failure to warn, the district court ruled for Firestone as a matter of law on the warning claim, and a jury found for Firestone on the remaining claims. Plaintiffs' appeal alleges error in the warning ruling and various trial errors. For the reasons stated below we affirm the judgment entered for Firestone.

I

When he died, Staley had nearly completed the installation of six new tires on a road grader in Fort Carson, Colorado. Two Fish and Wildlife workers found Staley's body lying face down about ten to twelve feet from the road grader some two hours after

- 2 -

Staley had reported to his employer that he had two tires left to mount. The lock ring and the side ring of the multipiece tire rim assembly were found between the road grader and the body, with a hammer nearby. Staley died from trauma to the heart, which plaintiffs argued was caused when the lock ring exploded off of the rim assembly and hit Staley in the chest. There was no eyewitness to the accident.

Plaintiffs alleged that the multipiece rim was defective, unreasonably dangerous, and negligently designed because it had a tendency to explosively separate under foreseeable service conditions. They produced evidence that if the components of the rim were assembled without being fully engaged they might separate following the addition of inflation pressure. The rim lacked a warning, and they argued Firestone negligently failed to adequately warn of the hazards of the multipiece rims. Plaintiffs also asserted there were safer alternative designs that would ensure seating of components or include only one piece that could not separate.

Firestone's primary defense was misuse, that Staley mounted the tire contrary to his safety training. Firestone introduced evidence that Staley signed a training record acknowledging his hands-on training and familiarity with the OSHA rim servicing regulation applicable to this rim and agreeing to comply with the OSHA procedures. The parties contested at trial the amount of Staley's training.

Firestone produced evidence that Staley's employer published and distributed safety literature posters and manuals instructing and warning their tire servicing employ-

ees about the necessity of using a restraint when putting the multipiece rim together and standing clear during inflation, and of the danger of hammering on the rim. Firestone also offered evidence that on the Friday before the accident a wildlife manager observed Ssalvy hitting a rim with a hammer while inflating the tire, without restraining the tire and rim assembly. This witness testified that Staley said he inflated the tires to eighty-five pounds although the correct pressure would be no more than thirty or thirty-five pounds.

An OSHA report introduced into evidence concluded that the accident occurred because Staley failed to follow the mandated safety procedures. That report found Staley probably hammered the lock ring on the inflated tire and rim assembly and did not use a tire and rim restraint; it criticized Staley's employer for not providing a safety cage and functional clip-on air chuck.

## II

Plaintiffs assert that the district court erred in granting Firestone's motion for judgment as a matter of law on plaintiffs' negligence and strict liability claims for failure adequately to warn. We review a district court order granting a Fed. R. Civ. P. 50 judgment as a matter of law de novo, applying the same standard as the district court. Lyon Dev. Co. v. Business Men's Assurance Co. of Am., 76 F.3d 1118, 1122 (10th Cir. 1996). We view the evidence in the light most favorable to the nonmoving party, and determine whether a jury could properly find in favor of the nonmoving party. Lamon v.

City of Shawnee, Kansas, 972 F.2d 1145, 1151 (10th Cir. 1992), cert. denied, 507 U.S. 972 (1993).  Under Colorado law

> [a] failure adequately to warn can render a product, otherwise free of defects, defective for purposes of strict liability recovery.  Hiigel v. General Motors Corp., 190 Colo. 57, 544 P.2d 983 (1975).  Under strict liability, the test is whether the manufacturer's failure adequately to warn of the potentially dangerous propensities of its product rendered the product unreasonably dangerous.  Union Supply Co. v. Pust, supra.  Should the manufacturer fail to give warnings of dangers inherent in the product or in its intended use sufficient to make it safe, the product is in a defective condition "unreasonably dangerous" to the user or consumer.  Hiigel v. General Motors Corp., supra; see also Restatement (Second) of Torts § 402A comment j (1965).

Davis v. Caterpillar Tractor Co., 719 P.2d 324, 327 (Colo. App. 1985).  Also, "[a] manufacturer or seller has a duty to warn of unreasonable dangers associated with the use of its product if the dangers are not obvious to its product users and if it knows or should know of them; breach of this duty constitutes negligence."  Id. at 328.

The district court found that defendant was not strictly liable for a failure to warn and had no duty to warn Staley because his employer understood the alleged dangerous condition posed by multipiece rims.  The court relied on Cruz v. Texaco, Inc., 589 F. Supp. 777 (S.D. Ill. 1984), which held that because the decedent's employer was aware of the potential danger of driving at high speed in a winch truck with objects suspended from the rear of the truck, the manufacturer could rely on the employer to warn the employee.

Plaintiffs argue that Colorado has not adopted this "knowledgeable purchaser" defense. Indeed, our research has revealed no Colorado cases specifically adopting or rejecting this defense. We agree with plaintiffs that <u>Kysor Indus. Corp. v. Frazier</u>, 642 P.2d 908 (Colo. 1982), more nearly supports their position on this issue than Firestone's. The <u>Kysor</u> court stated that although a user is an expert in the field that "does not preclude a finding of a defective and unreasonably dangerous product due to a failure to warn or instruct as to the safe and proper method" of using the product. <u>Id.</u> at 911.

But even if the district court erred in its reliance on <u>Cruz</u>, Firestone's alternative arguments for upholding the judgment on the product warning claim are persuasive. Plaintiffs did not show how an effective warning could have been placed on the thin lock ring, the only component manufactured by Firestone.[1] <u>See</u> <u>Camacho v. Honda Motor Co.</u>, 741 P.2d 1240 (Colo. 1987). Further, plaintiffs did not show that the lack of the warning caused the accident. <u>See</u> <u>Duffee v. Murray Ohio Mfg. Co.</u>, 879 F. Supp. 1078, 1084 (D. Kan. 1995), <u>aff'd</u>, 91 F.3d 1410 (10th Cir. 1996). Although under Colorado law plaintiffs are entitled to a presumption that an adequate warning would have been heeded, <u>see</u> <u>Perlmutter v. United States Gypsum Co.</u>, 4 F.3d 864 (10th Cir. 1993), the evidence was unrefuted that Staley was instructed in the OSHA-prescribed regulations and certified that he knew them. Further, he had observed, during training, an experienced Brad Ragan,

---

[1] Plaintiffs produced evidence that Goodyear--which manufactured the other two parts of the multicomponent assembly--probably could have put a warning on those parts; but Goodyear is not a defendant here.

- 6 -

Inc. employee assemble large tires using the required safety procedures. He also had been extensively trained on large tire assemblies while in the Army. Finally, plaintiffs' fundamental claim--that there was no warning which would make the product safe--was essentially a defective design claim, and that contention was presented to the jury.

III

A

Plaintiffs contend that the district court erred in instructing the jury regarding product misuse. They argue the evidence did not support the giving of a misuse instruction under Colorado law and, alternatively, even if proper the instruction incompletely stated the law of Colorado regarding product misuse.

In a diversity case the substance of a jury instruction is a matter of state law, but its grant or denial is a procedural matter controlled by federal law. Farrell v. Klein Tools, Inc., 866 F.2d 1294, 1296 (10th Cir. 1989). We review a district court's jury instructions as a whole, under a de novo standard, United States v. Migliaccio, 34 F.3d 1517, 1523 (10th Cir. 1994), and reverse only if an error was prejudicial based on the entire record.

Firestone's main defense at trial was that Staley failed to follow safety procedures when he mounted the tire and his failure to do so caused the rim assembly to explode. The alleged misuse included failure to use a tire and rim restraint and hammering on the lock ring of an inflated tire. Colorado has adopted Restatement (Second) of Torts § 402A (1965), which "recognizes a defense for the manufacturer where the user mishandles or

misuses a product and thereby creates a dangerous condition." Jackson v. Harsco Corp., 673 P.2d 363, 367 (Colo. 1983).

There are three elements of misuse under Colorado law: (1) use in an unintended manner or for an unintended purpose, (2) the use was not reasonably foreseeable by the manufacturer, and (3) the misuse caused the injury. See Uptain v. Huntington Lab, Inc., 723 P.2d 1322, 1325-26 (Colo. 1986). Plaintiffs contend that Firestone could foresee the possibility of misuse and thus was not entitled to the misuse instruction. Plaintiffs argue that Firestone was aware of other injuries and deaths resulting from conduct similar to that in which Staley was allegedly engaging when the rim exploded. Specifically they cite a 1973 incident in which a lock ring that was not properly seated injured a manager who hit it with a hammer. Plaintiffs also cite expert testimony to the effect the explosion was foreseeable in the circumstance that Staley hammered on the rim to try to seat it. Plaintiffs rely on Armentrout v. FMC Corp., 842 P.2d 175, 187-89 (Colo. 1992), and Schmutz v. Bolles, 800 P.2d 1307, 1316 (Colo. 1990), in which the Colorado Supreme Court found it was error to give a misuse instruction when the plaintiffs had produced evidence of prior reported incidents involving the same conduct that the defendants claimed constitute misuse. Cf. Meller v. Heil Co., 745 F.2d 1297, 1303 (10th Cir.) (trial court properly refused to give misuse instruction when record contained "abundant evidence that [the defendant] should have anticipated the likelihood that a person might

place himself between the chassis and the dump [truck] bed and thereby encounter the obvious dangers associated with the trip cable"), cert. denied, 467 U.S. 1206 (1984).

In the instant case, however, there was evidence of only one incident involving hammering on this kind of product. This contrasts with numerous instances of failure to properly clean a medical drill in Schmutz, see 800 P.2d at 1316-17, and evidence of "numerous incident reports" of similar accidents in Armentrout, see 842 P.2d at 189. Firestone introduced evidence that the rim components had been involved in over ten million servicings with only eight total accidents of any type. Further, two defense experts testified that they would not have foreseen that a serviceman would have hammered on a partially disassembled lock ring on an inflated tire. In the circumstances of this case we agree with the district court that a misuse instruction was proper, and whether the decedent's conduct was reasonably foreseeable was a fact issue for the jury.

Plaintiffs argue that even if a misuse instruction was proper the instruction given failed to tell the jury that if it did not find misuse it could still consider Staley's conduct in apportioning fault. The court's instruction on misuse was as follows:

> A manufacturer of a product is not legally responsible for injuries or damages caused by a product if:
> 1. The product was used in a manner other than that which was intended;
> 2. That use could not reasonably have been expected by the manufacturer; and
> 3. Such use rather than a defect, if any, in the product caused the plaintiff's claimed injuries or damages.

Appellants' App. 134, 707. The pattern jury instruction in Colorado from which this came also included the following paragraphs:

> If you find that all of these three propositions have been proved, then your verdict must be for the manufacturer.
>
> (On the other hand, if you find that any of these three propositions has not been proved, you may still consider whether plaintiff's use of the product constitutes comparative fault, as that term is defined in these instructions.)

Id. at 167.

Plaintiffs argue that because the first of these unnumbered paragraphs was omitted the jury was not required to find all three elements before finding for the defendant manufacturer on misuse. But we read the inclusion of the word "and" in the instruction to indicate to the jury that they must find each of the three elements of misuse. Further, the instructions as a whole made clear that Firestone had the burden to establish the affirmative defense of misuse.

Plaintiffs argue that failure to include the second unnumbered paragraph was error because it did not allow the jury to consider comparative fault. They argue that Firestone at best showed Staley used the rim in an improper fashion rather than misused it. We need not decide whether there is a difference between misuse and improper use in this context. The evidence supported giving the misuse instruction, and the jury found all the elements of misuse. The permission given the jury by the omitted paragraph becomes applicable only if the jury finds one or more of the elements unproved. Thus, even if the court erred in failing to give this part of the instruction it was harmless.

B

Plaintiffs assert the district court erred in giving an instruction on alternative designs because the instruction was not warranted under Colorado law and overemphasized a single element of the risk/benefit analysis. The challenged jury instruction was as follows:

> Plaintiffs have claimed that there was an alternative design to the TG rim that was safer. For any design to be considered an alternative to the TG design, plaintiffs must show that the alternative safer design was practicable under the circumstances and said design was available at the time the TG lock ring was placed into commerce in 1973.

Appellants' App. 706-07. Plaintiffs argue that although a feasible alternative is one factor to be considered in the risk/benefit analysis in determining whether a product design is unreasonably dangerous, it is not a required element. This instruction, however, was based on Allen v. Minnstar, Inc., 8 F.3d 1470 (10th Cir. 1993), in which we discussed recovery under Restatement (Second) of Torts § 402A comment i. We there held that to recover a plaintiff must show not only that the alternative is safer but that it was practicable and available at the time the allegedly dangerous product was sold. Allen, 8 F.3d at 1479. The instruction on alternative designs was not reversible error.

IV

Plaintiffs assert the district court made various errors in the admission or exclusion of evidence during trial, decisions we review only for abuse of discretion. C. A. Assocs. v. Dow Chem. Co., 918 F.2d 1485, 1489 (10th Cir. 1990).

A

First, plaintiffs argue the court erred in allowing the jury to consider evidence and argument regarding the negligence or fault of nonparties including the decedent's employer (Brad Ragan, Inc.) and Goodyear. They cite Colo. Rev. Stat. § 13-21-111.5(3) which provides that negligence or fault of a nonparty may be considered "if the defending party gives notice that a nonparty was wholly or partially at fault within ninety days following commencement of the action unless the court determines that a longer period is necessary." Id. After dismissing Goodyear from the case as a defendant, the district court granted plaintiffs' motion to strike Firestone's designation of Goodyear as a nonparty at fault because the designation did not identify the conduct that could provide a basis for finding Goodyear at fault. Plaintiffs argue that the designation requirement must be strictly construed, relying on the following statement from Thompson v. Colorado & E. R.R. Co., 852 P.2d 1328 (Colo. App. 1993):

> Requiring such strict compliance with the statute avoids a situation in which a named defendant reduces its liability by blaming a nonparty but a plaintiff does not have the chance to recoup that percentage of fault from the nonparty.
>
> We hold that a court may not allow the finder of fact to consider the negligence or fault of a nonparty unless such issue has properly been raised

- 12 -

by the defendant in a pleading which complies with the requirements of § 13-21-111.5(3), C.R.S. (1987 Repl. Vol. 6A).

852 P.2d at 1329-30.

The district court here refused to allow the jury an opportunity to apportion fault to Goodyear or Brad Ragan, but permitted evidence of their conduct to establish causation. We hold this is a proper distinction from the situation involved in <u>Thompson</u>. Firestone can only be held liable if its conduct was a contributing cause of the injury. It surely must be allowed to defend itself by showing someone else's action or inaction was the sole cause of the injury. That is different from apportionment between two parties both of whose fault contributed to the injury. The jury instructions as a whole correctly set out Colorado law on causation, and we must presume that the jury followed the law. <u>United States v. Lane</u>, 883 F.2d 1484, 1498 (10th Cir. 1989), <u>cert.</u> <u>denied</u>, 493 U.S. 1059 (1990). Because the jury found no liability on the part of the only named defendant, there was no reason for the jury to assign or apportion fault to other parties. <u>See</u> <u>Thompson</u>, 852 P.2d at 1329-30.

B

Plaintiffs assert the district court erred in excluding exhibits relating to the danger of multipiece rims and the safety and feasibility of the single piece rim design, and in denying admission of the emergency room record. The deference we accord a trial court's discretion "is particularly fitting in lengthy trials including . . . highly technical expert testimony." <u>See</u> <u>C. A. Assocs.</u>, 918 F.2d at 1489. "The threshold inquiry in any

- 13 -

argument asserting erroneous exclusion of evidence is, of course, whether the evidence is relevant." Id. Once relevance has been determined (and it is not contested here), the district judge must balance "the probative value of and the need for the evidence against the harm likely to result from its admission." Id. (citations omitted).

Plaintiffs argue that they should have been allowed to admit a 1958 magazine article characterizing multipiece truck tire rings as "killer" rings.[2] The district court did not abuse its discretion by excluding that exhibit because it dealt with truck tires, not grader tires, and its probative value was substantially outweighed by the potential for prejudice. Plaintiffs also asserted that the "Di Federico Memorandum," which referred to the magazine article, was erroneously excluded. Our review of that memorandum convinces us it was not particularly relevant to the issue of use of multipiece rims for the off-road graders at issue in this case.

Plaintiffs also argue that the district court erred in excluding the emergency room record. They point out that there was inconsistent evidence concerning the external markings on Staley's body; some evidence supported plaintiffs' position that only a ring

---

[2] Plaintiffs rely on Jackson v. Firestone Tire & Rubber Co., 788 F.2d 1070, 1087 (5th Cir. 1986), in which the Fifth Circuit held that the same 1958 memo and article were not unduly prejudicial. The fact that another court in another case denied a motion to exclude this evidence does not mean that it was error for the district court in this case to exclude the evidence. Jackson involved truck tires and rims for which it was shown that there was a safer alternative, a single piece rim, at the time the rim components were manufactured, while Firestone introduced considerable evidence that it was not possible to use a single piece rim for the grader tires at issue here at the time this multipiece rim was manufactured.

struck him, while other testimony supported Firestone's position that the hammer struck Staley, indicating that he hammered on the ring. Plaintiffs note that the emergency room record indicated the contusions on Staley's chest were curvalinear, and thus was evidence that Staley was hit by a lock ring or side ring. But the contents of the report were presented to the jury by the doctor who performed the autopsy; she testified that the emergency room record and autopsy record both indicated a curvalinear contusion. The district court did not abuse its discretion in excluding the record itself.

C

Plaintiffs assert various other errors by the district court in admitting evidence that they contend was either irrelevant or prejudicial. They argue that allowing lay witnesses Ross and Travnicek, the game wardens who discovered the body, to speculate about what Staley had been doing at the time he was killed violated Fed. R. Evid. 701 which provides "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." We see no problem with the descriptions of the marks found on Staley's body or the description of the size and location of the equipment at the scene. Although the testimony about Staley's likely position just before the accident was somewhat speculative, it was not an abuse of discretion for the district court to allow that testimony.

- 15 -

Plaintiffs also assert that Chris Bandy's testimony concerning Staley's actions in assembling a rim on an earlier occasion violated Fed. R. Evid. 404(b). The district court limited the use of Bandy's testimony to evidence of Staley's plan or procedures and not as proof of a habit. Evidence of the procedures Staley used while working on the project on the last workday before he was killed was relevant, admissible evidence.

Plaintiffs contend that the district court should not have admitted the Occupational Safety and Health Administration (OSHA) investigation report because it was based on hearsay and was unduly prejudicial. Such a report may be admitted if the district court determines it is trustworthy pursuant to Fed. R. Evid. 803, and that its relevance outweighs risks of prejudice under Fed. R. Evid. 403. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988). Although plaintiffs argue that the report was not trustworthy, see Hines v. Brandon Steel Decks, Inc., 754 F. Supp. 199, 201 (M.D. Ga. 1991) (excluding an OSHA report after inquiry into trustworthiness, relevance and possible prejudice), aff'd, 948 F.2d 1297 (11th Cir. 1991), cert. denied, 503 U.S. 971 (1992), the district court reviewed the entire report, redacted some portions, and admitted only a fraction of the report. Further, plaintiffs' own experts considered and relied upon portions of the OSHA report. The district court properly determined the portions admitted were not impermissible hearsay and that the report was admissible under Fed. R. Evid. 401, 403 and 803.

Finally, plaintiffs argue that the OSHA regulations concerning the servicing of multipiece and single piece rims should not have been admitted because they regulated

the conduct of Staley's employer and not Staley. Firestone points out that Staley was trained and instructed concerning the regulations and had agreed to comply with them and thus the OSHA regulations were evidence concerning foreseeable misuse. Cf. Canape v. Peterson, 878 P.2d 83, 85 (Colo. App. 1994) (allowing OSHA regulations as evidence, while noting violations of OSHA not negligence per se), aff'd, 897 P.2d 762 (Colo. 1995). The district court did not abuse its discretion in admitting the OSHA regulations.

V

Finally, plaintiffs contend that the district court erred in denying their for cause challenge of juror Jerry R. Perez. During voir dire Perez stated that he had worked with multipiece rims and had used protective cages while working on tires. Plaintiffs argue that because Firestone's entire defense was built on a claim that Staley failed to follow proper procedures in servicing the multipiece rim, including not using a restraining device, Perez' close connection to similar facts rendered him biased.

"Generally, a court must grant a challenge for cause if the prospective juror's actual prejudice or bias is shown." Vasey v. Martin Marietta Corp., 29 F.3d 1460, 1467 (10th Cir. 1994). "Actual bias may be shown either by a juror's express admission, or by proof of specific facts which show the juror has such a close connection to the facts at trial that bias is presumed." Id. at 1467. Perez stated that he could be fair and would base his decisions on the evidence and not on his own experience. But even if the denial of the for-cause challenge was error, it was harmless because Perez was removed by a peremp-

- 17 -

tory challenge. <u>See</u> <u>Getter v. Wal-Mart Stores, Inc.</u>, 66 F.3d 1119, 1122-23 (10th Cir. 1995) (where district court erroneously denied for-cause challenge but plaintiff used peremptory challenge to remove challenged juror, and made no allegation that jury as seated was biased, error was harmless), <u>cert.</u> <u>denied</u>, 116 S. Ct. 1017 (1996). We see no basis for holding that plaintiffs were prejudiced by the court's failure to excuse Perez for cause.

AFFIRMED.