ANTONIO CARRIZALES, JR., Plaintiff-Appellant, v. RHEEM MANUFAC-
TURING COMPANY, INC., Defendant-Appellee.

First District (3rd Division) No. 1—89—1620

Opinion filed December 27, 1991.—Rehearing denied March 26, 1992.

22

James A. Stamos and Robert D. Shearer, both of Stamos & Rimland, of Chicago, for appellant.

Stephen E. Sward, Michael C. Borders, and Harry N. Arger, all of Rooks, Pitts & Poust, of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Antonio Carrizales filed a negligence action against Rheem Manufacturing Company to recover damages for personal injuries sustained when flammable vapors from his gasoline-soaked clothing were ignited by the flame of a gas-fired hot water heater manufactured and distributed by defendant.

Plaintiff appeals from the trial court's entry of partial summary judgment for the defendant and dismissal of plaintiff's complaint on a motion pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615).

Plaintiff raises nine issues for review and argues the trial court erred (i) in taking judicial notice of certain facts upon which summary judgment was predicated; (ii) in determining defendant owed no duty to warn plaintiff that flammable gasoline vapors should not be brought into close contact with its gas-fired heater; (iii) in determining defendant owed no continuing duty to warn plaintiff in that regard; (iv) by improperly granting defendant's section 2—615 motion to dismiss plaintiff's negligent design claim as insufficient at law; (v) in refusing plaintiff leave to amend his complaint by adding a punitive damages count; (vi) by granting defendant's motion *in limine* to exclude evidence of post-sale, pre-injury remedial measures; (vii) in the exercise of its discretion by allowing defendant to file answers to plaintiff's request to admit facts at the time of trial more than 28 days after request was served; (viii) by excluding evidence of industry standards for installers on the grounds of relevancy; and (ix) in refusing to admit the prior knowledge of one of

defendant's design employees regarding the danger of allowing flammable vapors in close proximity to a gas-fired heater.

We reverse the trial court in part and determine that the defendant owed a duty to warn plaintiff as to the effect of bringing gasoline vapors in close contact with its product, although no continuing duty obtained after the product left its hands; that the application of judicial notice was overly broad; that plaintiff failed to state a cause of action for negligent design; that the court properly excluded evidence of industry standards for installers; that there may be no imputation of knowledge of dangerous propensities by an employee through a personal experience where employee was apparently hired after the manufacture of the product; that post-sale, pre-injury remedial measures are excluded; and that the court erred in allowing defendant to file at time of trial an amended answer to notice to admit facts.

In May 1966, defendant manufactured a type of residential gas-fired water heater called the "Fury" which was distributed by defendant in 1966 and installed by others in a welding shop at 4845 South Western Avenue in Chicago. At that time, the heater was placed in the washroom near a sink. The water heater had a small metal instruction panel located at its base which identified it as gas-fired and gave instructions for lighting the pilot light.

In 1979, Richard Witasek purchased the building and converted it to an automobile repair garage. Witasek hired plaintiff as a helper-apprentice in 1981. On April 16, 1982, plaintiff assisted in the removal of a leaking gas tank from an automobile in the shop. While attempting to pour the remaining gasoline from the tank into a bucket, plaintiff slipped and fell on his hands into the bucket, splashing gasoline into his eyes and on his face, hands, arms, upper torso and clothing. He immediately went into the washroom to rinse his eyes at the sink. Before plaintiff could turn on the water, the flammable vapors from his gasoline-soaked clothes were ignited by the flame in the hot water heater and plaintiff suffered severe burns and disfigurement.

In a negligence action, a plaintiff must present sufficient facts to establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury that proximately resulted from that breach. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140, 554 N.E.2d 223; *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 215, 530 N.E.2d 1351.) The trial court must determine as a matter of law whether the facts in the particular case establish that the defendant owed a duty to plaintiff and that the parties stood in

such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff. *Ward*, 136 Ill. 2d at 140; *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, 18-19, 440 N.E.2d 96; *Lutz v. Goodlife Entertainment, Inc.* (1990), 208 Ill. App. 3d 565, 568, 567 N.E.2d 477.

Factors that a court considers in determining the existence of a duty are (i) the foreseeability of the injury, (ii) the likelihood of injury, (iii) the magnitude of the burden of guarding against the injury, and (iv) the consequences of placing that burden upon the defendant. *Lamkin v. Towner* (1990), 138 Ill. 2d 510, 522, 563 N.E.2d 449; *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617; *Duncavage v. Allen* (1986), 147 Ill. App. 3d 88, 497 N.E.2d 433; *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 465 N.E.2d 513; *Zimmermann v. Netemeyer* (1984), 122 Ill. App. 3d 1042, 462 N.E.2d 502.

Plaintiff asserts that the trial court erred in ruling that defendant had no duty to warn plaintiff of the danger in allowing flammable gasoline vapors to come into close proximity to the gas-fired heater. We agree.

A duty to warn of a particular hazard will be imposed only where there is unequal knowledge, either actual or constructive, and the defendant knows or should know that injury may occur if no warning is given. (*Collins v. Hyster Co.* (1988), 174 Ill. App. 3d 972, 977, 529 N.E.2d 303.) If a danger is obvious and generally appreciated, then there is no duty to warn because the purpose of a warning is to apprise the party of danger unknown to him so that he may protect himself from that danger. *Mazikoske v. Firestone Tire & Rubber Co.* (1986), 149 Ill. App. 3d 166, 500 N.E.2d 622; *Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 1099, 419 N.E.2d 561.

In support of his contention that defendant owes a duty to warn, plaintiff argues that (1) the trial court erred by judicially noticing certain facts that would lead to the conclusion that the danger of ignition is patently obvious when gasoline fumes are in close proximity to a gas-fired water heater; (2) that the defendant manufacturer should be required to warn of patent dangers in its products as a matter of public policy; and (3) that plaintiff in this case did not have actual subjective knowledge of the danger sufficient to negate defendant's duty to warn.

We first address plaintiff's argument that the court took improper judicial notice of certain facts. A trial court may allow some facts to be admitted as evidence without formal proof because the

court deems them to be of common and general knowledge, well established and known within the trial court's jurisdiction. *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 394, 469 N.E.2d 1085 (judicial notice may be taken of matters commonly known or readily verifiable from sources of indisputable accuracy); *People v. Tassone* (1968), 41 Ill. 2d 7, 12, 241 N.E.2d 419 (judicial notice may be taken of matters which "everyone knows to be true").

The trial court took judicial notice of these facts:

(1) it is the vapors given off by gasoline that ignite;

(2) fire uses oxygen in the air to burn;

(3) gasoline vapors are flammable and explode on ignition;

(4) gasoline vapors travel on air; and

(5) fuel-energized devices are using this air to sustain themselves.

Plaintiff contends that these facts are not matters of common and general knowledge (*Cook County Department of Environmental Control v. Tomar Industries* (1975), 29 Ill. App. 3d 751, 754, 331 N.E.2d 196) nor are they generally known to well-informed persons in the community. *Motion Picture Appeal Board v. S.K. Films* (1978), 65 Ill. App. 3d 217, 382 N.E.2d 103.

In rebuttal, defendant cites *Bellomy v. Bruce* (1939), 303 Ill. App. 349, 25 N.E.2d 428, where the court found it a matter of common knowledge that an open flame should not be allowed in an area where gasoline is being used or exposed to air because the gasoline vapors, when mixed with the higher proportion of oxygen in the air, become highly flammable and explode. (*Bellomy*, 303 Ill. App. at 358.) In that case, plaintiff and defendant's assistant transferred gasoline from one tank to another via buckets by the light of a lantern 20 feet away. When the gasoline vapors reached the lantern, there was an explosion and plaintiff was severely burned.

The *Bellomy* court's conclusions are inapplicable to the facts of the case at bar. There the parties were transferring large bulk quantities of gasoline by bucket. The possibilities of ignition are not equally cognizable between a bulk transfer of flammable liquids and the mere splashing of such liquid on the eyes and clothes of plaintiff.

■■ Judicial notice of the fact that it is the vapors that ignite, that they travel on air and are flammable does not provide a basis for the trial court's summary judgment. The flame is at the base of the water heater, out of sight and enclosed by a metal ring or plate.

Issues as to the remoteness of the flammable liquid from the flame source must be factored into the equation before the danger attendant to such a device can be considered open and obvious.

The notion that "fuel-energized devices are using the air to sustain themselves" ought to be outside the ambit of judicial notice since this represents an understanding of how such a complex device operates.

Defendant also cites other cases that have considered gasoline vapors: *Gore v. City of Carlinville* (1956), 9 Ill. 2d 296, 137 N.E.2d 368 (judicial notice taken that handling gasoline is attended with peculiar degree of danger); *Fligelman v. City of Chicago* (1932), 348 Ill. 294, 180 N.E.2d 797 (matter of common knowledge that gasoline is highly combustible and explosive); and *People ex rel. Busching v. Ericsson* (1914), 263 Ill. 368, 105 N.E. 315 (flammable character of gasoline fumes is common knowledge). These latter cases, however, relate to the licensing of filling stations and parking garages under city ordinances, and are not analogous to the situation in the case at bar.

The record also does not appear to show how one might know that the device is a gas-fired appliance. Electric hot water heaters are in common use and similar in appearance to the gas-fired version.

To be sure, there was a small plate affixed to the base of the heater noting this was a gas-fired device and instructions for pilot lighting. However, unless plaintiff was the employee charged with lighting the pilot, there would have been little chance for him to take note of the language set out on the plate. At his deposition he testified that he had no occasion to be on his hands and knees in the washroom in order to view the information plate.

Several cases from other jurisdictions have dealt directly with the issue of gas-fired hot water heaters igniting gasoline vapors. (*Toups v. Sears, Roebuck & Co.* (La. 1987), 507 So. 2d 809, 811, 816; *Hohlenkamp v. Rheem Manufacturing Co.* (App. 1979), 123 Ariz. 535, 601 P.2d 298; *Harris v. Northwest Natural Gas Co.* (1978), 284 Or. 571, 579-80, 588 P.2d 18, 23.) While these cases do not decide the issue of judicial notice, *Hohlenkamp* and *Harris* point out that the flame on the hot water heater is hidden from view, that many people may not know that gasoline vapors as well as the liquid gasoline are flammable, and that the combination of these two facts makes the danger less than obvious, especially when the flame is in an appliance and the gasoline is handled away from the appliance. In *Hohlenkamp*, the court states:

> "[I]t would at first blush appear that a gas-fired appliance with a constant pilot light presents an open and obvious danger to combustibles. However, the expert testimony indicates

that misapprehension as to the characteristics of volatile vapors and the danger inherent in bringing items that may exude such into an area where a pilot light burns is common. *** Furthermore, the flame of the pilot light is generally out of sight and the danger is hidden from view, perhaps frequently forgotten, and in the case of some individuals, not even recognized." (*Hohlenkamp*, 123 Ariz. at 537, 601 P.2d at 300.)

In *Toups*, the court noted that plaintiffs were unaware that the heater sucked in outside air to sustain its flame, and defendant's expert admitted it was not a matter of common knowledge, as did an article in a manufacturers and vendors magazine that was entered into evidence. *Toups*, 507 So. 2d at 811, 819.

We find that judicial notice of the fact that fuel-energized devices use outside air to sustain themselves was erroneous. Plaintiff testified that although he had previously lit the pilot light on other water heaters, he had no knowledge of the workings of this particular heater, had no occasion to read the information on the plate and was not aware that the flame was continuous. To the extent that the trial court relied on judicial notice of facts or on the knowledge of plaintiff in its partial summary judgment determination that no duty was owed because the danger was patently obvious, that partial summary judgment is reversed.

Because we find the danger was not patently obvious, we need not address plaintiff's argument that thoughtful public policy dictates that a defendant be required to warn of even patently obvious dangers.[1]

---

[1]"Open and obvious" has not always been obvious to Illinois courts. Although most of these decisions relate to strict liability cases, they are appropriate to cite.

*Decisions for plaintiff: Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223 (failure to warn of a concrete post outside the entrance door to its store); *Kutzler v. A M F Harley-Davidson* (1990), 194 Ill. App. 3d 273, 550 N.E.2d 1236; *Bossert v. Tate* (1989), 183 Ill. App. 3d 868, 539 N.E.2d 729; *Byrne v. S C M Corp.* (1989), 182 Ill. App. 3d 523, 538 N.E.2d 796 (exposure to epoxy paint fumes may cause brain damage); *Medina v. Air-Mite Devices, Inc.* (1987), 161 Ill. App. 3d 502, 515 N.E.2d 770 (placing one's hand near the ram of an operating air press may cause personal injury); *Miller v. Dvornik* (1986), 149 Ill. App. 3d 883, 501 N.E.2d 160 (the risk of being struck by an automobile is open and obvious to any motorcycle rider); *Hayes v. Kay Chemical Co.* (1985), 135 Ill. App. 3d 932, 482 N.E.2d 611 (1st Dist. 3d Division) (duty to identify colorless cleaner in manner that it not be confused as water); *Jonescue v. Jewel Home Shopping Service* (1973), 16 Ill. App. 3d 339, 306 N.E.2d 312 (heavy duty cleaner may cause sickness or injury if ingested by a small child).

Having concluded that the danger was not open and obvious, we next examine whether there was a duty to warn, considering the standard negligence factors of foreseeability of plaintiff's injuries, magnitude of the burden on defendant to guard against such injuries, and the consequences of requiring defendant to guard against such injury.

The legal concept of "duty" is only an expression of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection. *Ward*, 136 Ill. 2d at 140; *Rowe*, 125 Ill. 2d at 227; *Nelson*, 124 Ill. App. 3d at 662.

In determining whether plaintiff's injuries are foreseeable, the focus is on whether the type of injury plaintiff has received is foreseeable, and not on the exact nature or mechanics of the occurrence. *Rowe v. State Bank* (1988), 125 Ill. 2d 203, 227, 531 N.E.2d 1358

---

*Decisions for defendant: Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465 (common knowledge that electricity may become dangerous when metal comes into contact with power lines); *Pitts v. Basile* (1966), 35 Ill. 2d 49, 219 N.E.2d 472 (darts thrown in the direction of other persons may cause personal injury); *Mealey v. Pittman* (1990), 202 Ill. App. 3d 771, 559 N.E.2d 1173 (common knowledge that injury will result from a hard object (numchucks) forcefully striking a person in the eye); *Lara v. Thoro-Matic Vacuum Systems, Inc.* (1990), 194 Ill. App. 3d 781, 551 N.E.2d 390 (a common and obvious condition of a vacuum cleaner is that it has a cord attached which may cause injury if one fails to guard against tripping over it); *Schroth v. Norton Co.* (1989), 185 Ill. App. 3d 575, 541 N.E.2d 855 (safety glasses can be knocked away from the eyes by a strong blow leaving the eyes unprotected); *In re Estate of Dickens* (1987), 161 Ill. App. 3d 565, 515 N.E.2d 208 (all persons of ordinary intelligence and experience are presumed to know the dangers associated with antennas coming into contact with power lines); *Jackson v. Reliable Paste & Chemical Co.* (1985), 136 Ill. App. 3d 766, 483 N.E.2d 939 (suppliers of methanol did not owe duty to repackager to warn of dangers of methanol, as repackager was fully aware of methanol's flammable and explosive qualities); *Morgan v. Bethlehem Steel Corp.* (1985), 135 Ill. App. 3d 242, 481 N.E.2d 836 (danger posed when a motorist runs his auto into the side of a railroad car is open and obvious); *Huff v. Elmhurst-Chicago Stone Co.* (1981), 94 Ill. App. 3d 1091, 419 N.E.2d 561 (caustic nature of wet concrete is common knowledge in the construction industry); *Weiss v. Rockwell Manufacturing Co.* (1973), 9 Ill. App. 3d 906, 293 N.E.2d 375 (without pressure plywood boards will be thrown off of cutting knives mounted on high speed rotating spindle); *Denton v. Bachtold Brothers, Inc.* (1972), 8 Ill. App. 3d 1038, 291 N.E.2d 229 (danger of rotary mower blades is open and apparent). Also see *Murphy v. Cory Pump & Supply Co.* (1964), 47 Ill. App. 2d 382, 197 N.E.2d 849.

This list was partially set out in unpublished seminar material on "Strict Liability in Tort" by Hon. Thomas E. Hoffman and Hon. Charles W. Chapman, offered by the Administrative Office of Illinois Courts, April 4, 1991.

(defendant negligently failed to provide security measures for office workers, where crimes had already been committed and defendants knew passkeys were missing, so crime committed by third party's unauthorized entry was foreseeable since risk of harm already existed); *Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 101-02, 311 N.E.2d 128 (manufacturer of steel flooring sheets knew sheets might be dislodged in transit so it was foreseeable the bundle of sheets would be dislodged when it was moved by forklift); *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 661, 465 N.E.2d 513 (since power company knew there was a danger to children using public playground with high voltage wires overhead, it was improper to dismiss as unforeseeable fact that child would throw a spool of copper wire in direction of high voltage wires 30 feet from the ground); *Kenny v. Lakewood Engineering & Manufacturing Co.* (1979), 85 Ill. App. 3d 790, 794, 407 N.E.2d 551 (an uncommon method of unloading a trailer with a forklift was not so unforeseeable as to negate plaintiff's claim).

In this case, plaintiff argues it is reasonably foreseeable that gasoline may in some manner be brought near a water heater and that its vapors may be ignited by the pilot light. He argues that his injuries are foreseeable, even if the sequence of events leading up to the accident is not. Plaintiff cites *Hohlenkamp, Harris*, and *Toups* from other jurisdictions, which indicate that a manufacturer has a duty to warn of the danger of allowing gasoline fumes in close proximity to the pilot light of a hot water heater.

In *Hohlenkamp*, the pilot light ignited the vapors or liquid from a spilled can of gasoline stored nearby, injuring a small child. The Arizona Court of Appeals held that the trial court erred in granting defendant summary judgment on the ground there was no duty to warn. The court found that for products liability purposes, a gas-fired water heater may be unreasonably dangerous without a warning that it has a constantly burning pilot light. As we have previously noted, the court recognized that the pilot light is hidden from view, that it is common practice to install a gas heater in storage rooms where combustibles might also be kept, and that there is a common misapprehension of the dangers inherent in bringing volatile vapors into close proximity with the pilot light. *Hohlenkamp*, 123 Ariz. at 537, 601 P.2d at 300.

*Toups* is very similar to *Hohlenkamp*; a child was injured when the pilot light of a hot water heater ignited fumes released when gasoline leaked from a gas-powered lawnmower. The Louisiana Supreme Court found that the evidence established that the manufacturer of

the heater breached a duty to warn regarding the danger of allowing gasoline to be in close proximity to the heater.

The plaintiff in *Harris* based his negligence cause of action, in part, on the failure of the defendant gas company to warn of the dangers associated with storing gasoline in the vicinity of a hot water heater. The Oregon Supreme Court reversed the dismissal of the negligent failure to warn claim based on the nature of the appliance and the inequality of knowledge between plaintiff and defendant; reasoning similar to that in *Hohlenkamp* and *Toups*. *Harris*, 284 Or. at 579-80, 588 P.2d at 23.

In its attempt to distinguish these cogent opinions, defendant argues it is foreseeable that gasoline might be stored near a heater, but that it is not reasonably foreseeable that a person would be soaked in gasoline and standing by a heater rinsing off at a sink. Defendant contends that a warning may be an effective deterrent to those persons considering where to store gasoline, but a warning would be useless in this situation because plaintiff would not have had the opportunity to heed it in his haste to wash the gasoline out of his eyes. Would that still be the case if plaintiff had been exposed to the warning each day as he passed by the appliance? We think not.

*Harris* is clearly a negligence claim based narrowly and exclusively on the defendant's failure to use care to provide warning that the natural gas could ignite; that such possibility was not so obvious when the flame in the appliance was not visible. Generally, the duty to warn must have some predicate negligent action before it comes into play. For example, a landowner may not be held liable for failure to warn of an accumulation of ice and snow absent showing that the ice and snow were a result of an unnatural or artificial accumulation and would have initially imposed liability. (*Newcomm v. Jul* (1971), 133 Ill. App. 2d 918, 273 N.E.2d 699.) Our supreme court later approved the concept that the duty of warning against a particular condition or hazard coexists with the corresponding liability for the hazard if no appropriate warning is given. *(Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 372 N.E.2d 822.) Applying these principles to the case at bar, defendant would argue that absent a determination that the defendant's product was unreasonably dangerous, no duty to warn of any danger could impose liability upon the manufacturer. A recent First District Appellate Court case rejected *Newcomm* and held that the failure to warn (provide proper lighting) was enough upon which to predicate a cause of action even though defendant would not be liable for its failure to remove natural accumulations of snow or ice. (*Weber v. Chen Enterprises, Inc.* (1989), 184 Ill. App. 3d 847, 540

N.E.2d 957.) The *Weber* court is critical of *Newcomm* and ignores the supreme court's approval of its principles in *Lansing.* While we cannot ignore such strong precedent, we do find that there is a distinction in negligence cases involving manufacturing and distribution of a product where the defendant is reasonably aware of the risk; there is a disparity in the relative knowledge and awareness of the parties; and such disparity and the injury are reasonably foreseeable by the defendant.

Since *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, which recognized the concept of liability without negligence, the focus of litigation has generally been on strict liability concepts rather than negligence.

Pre-*Suvada, Biller v. Allis Chalmers Manufacturing Co.* (1962), 34 Ill. App. 2d 47, 180 N.E.2d 46, determined that it was not essential that the product be inherently dangerous, in and of itself, to impose liability upon the manufacturer. Rather, it was sufficient "if the product be in such a condition that when put to the use and serving the very purpose for which it is bought and sold it is imminently perilous and that condition is not disclosed." *Biller,* 34 Ill. App. 2d at 57.

Subsequent courts have recognized a duty to warn where the propensities of a machine might create an unreasonable condition and where a manufacturer is reasonably aware of that danger from a particular use. *Williams v. Brown Manufacturing Co.* (1968), 93 Ill. App. 2d 334, *rev'd on other grounds* (1970), 45 Ill. 2d 418, 261 N.E.2d 305; *Wallinger v. Martin Stamping & Stove Co.* (1968), 93 Ill. App. 2d 437, 236 N.E.2d 755.

Illinois courts have relied on the Restatement (Second) of Torts, which provides:

"§388. ***

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." Restatement (Second) of Torts §388 (1977). *Baylie v. Swift & Co.* (1975), 27 Ill. App. 3d 1031, 327 N.E.2d 438; *Weiss v. Rockwell Manufacturing Co.* (1973), 9 Ill. App. 3d 906, 293 N.E.2d 375; *Cruz v. Texaco, Inc.* (S.D. Ill. 1984), 589 F. Supp. 777.

Accordingly, we determine that at least in connection with the manufacture of products and their distribution, a defendant may be liable merely for a failure to warn if the other conditions which we have discussed are present.

We find plaintiff's injuries here reasonably foreseeable. As discussed earlier, it is the nature of plaintiff's injuries, not the exact sequence of events leading to the injury, that is the focus of foreseeability. Defendant's engineering and research and development teams in 1966 were certainly aware of the dangerous propensities of gasoline vapors in the presence of an open flame. Given their scientific and technological backgrounds and training, it is highly probable they knew that in certain circumstances, there could be ignition of those vapors if they came into contact with the open flame of the pilot light, possibly causing injuries to people in the area. Since defendant knew the risk of burn injuries was foreseeable if the pilot light ignited gasoline vapors, the manner in which plaintiff received those injuries need not be precisely foreseeable. *Rowe*, 125 Ill. 2d at 227; *Lewis*, 57 Ill. 2d at 102; *Nelson*, 124 Ill. App. 3d at 660-63.

▌ While much emphasis has been placed on the "reasonable foreseeability" factor, the imposition of duty cannot depend on foreseeability alone. (*Lamkin*, 138 Ill. 2d at 522; *Ward*, 136 Ill. 2d at 140; *Rowe*, 125 Ill. 2d at 227; *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387.) We also must examine the magnitude of the burden on defendant to guard against injuries such as plaintiff received and the consequences of placing that burden on the defendant. *Rowe*, 125 Ill. 2d at 228.

It would not appear to be a heavy burden on defendant to warn against those injuries by placing a warning on the heater itself. As this court noted in *Jonescue v. Jewel Home Shopping Service* (1973), 16 Ill. App. 3d 339, 347, 306 N.E.2d 312 (the court found that while danger in ingestion of cleaning chemical was obvious, defendant negligently failed to attach a warning label), while a danger may seem obvious to many, others may not recognize it without a clearly worded and plainly visible warning. The court reasoned that the addition of an appropriate warning on the label would have been only a slight

burden to defendant but would have served public policy in protecting the unsuspecting.

Defendant would not suffer great expense in dispensing a warning label, unknowing consumers would be apprised of the dangers, and would be reminded every time they looked at the heater, thus having their recollection refreshed when conducting activities or storing materials near the heater.

Warnings are intended to assure a product's safe use. The defendant manufacturer may be liable for failing to warn of the dangers associated with unintended but foreseeable use of the appliance since we find that the danger is not obvious and generally appreciated. (*Oberg v. Advance Transformer Co.* (1991), 210 Ill. App. 3d 246, 569 N.E.2d 50; *Baylie v. Swift & Co.* (1975), 27 Ill. App. 3d 1031, 327 N.E.2d 438.) For our part, Illinois will join Arizona, Louisiana and Oregon, the only States that have spoken on the issue of a duty to warn in this context.

Plaintiff next asserts the trial court erred in entering summary judgment in favor of the defendant on plaintiff's allegation that there was a continuing duty to warn of the danger in allowing flammables to come into close contact with defendant's appliance.

■ Since we have already determined that defendant had a duty to warn at the time of manufacture and marketing, it is difficult to imagine what impact a subsequent warning might have had.

The record indicates that 9 or 10 years after manufacture and sale of the device in question, defendant developed an 18-inch stand upon which the hot water heater might be placed so that the flame of the pilot light would be above the floor level to which the heavier-than-air vapors would descend.

Illinois law has been reluctant to impose a duty to warn beyond the time when the product leaves the manufacturer's control unless the manufacturer knew or should have known at that time that the product was defective. *Kempes v. Dunlop Tire & Rubber Corp.* (1989), 192 Ill. App. 3d 209, 218, 548 N.E.2d 644; *Collins v. Hyster Co.* (1988), 174 Ill. App. 3d 972, 977, 529 N.E.2d 303.

Generally, it is a reasonable policy not to impose a continuing duty to warn against a hazard discovered subsequent to the time it left the manufacturer's control. Our courts do not contemplate placing a duty on manufacturers to subsequently warn all foreseeable users of products by reason of a better design or construction not available at the time the product entered the stream of commerce. *Collins*, 174 Ill. App. 3d at 977.

Plaintiff urges this court to adopt a requirement of continuing duty to warn for manufacturers. Other jurisdictions have adopted such a duty in certain circumstances. (*Gracyalny v. Westinghouse Electric Corp.* (7th Cir. 1983), 723 F.2d 1311 (where plaintiff worked in a highly technical field in industry); *Cover v. Cohen* (1983), 61 N.Y.2d 261, 461 N.E.2d 864 (transmission defect in Chevrolet); *Bly v. Otis Elevator Co.* (4th Cir. 1983), 713 F.2d 1040, 1045 (defect in truck lift under Virginia law); *Comstock v. General Motors Corp.* (1959), 358 Mich. 163, 99 N.W.2d 627 (motor vehicle hazard discovered after sale).) However, we believe that the facts of the case at bar do not provide us with an urgent reason for departing from established Illinois law.

The Wisconsin Supreme Court was critical of the notion of a continuing duty to warn in *Kozlowski v. John E. Smith's Sons Co.* (1979), 87 Wis. 2d 882, ____, 275 N.W.2d 915, 923-24. The court stated that while it may find a continuing duty is owed by a manufacturer of an industrial product sold to a limited market, it is unreasonable to find a continuing duty for manufacturers of mass-produced items found in every home, such as lawnmowers, snowblowers and fans. Because state-of-the-art technology for such items continually evolves to reduce hazards, it is unreasonable to place a continuing duty to warn upon the manufacturers of such common items. Such a rule might discourage manufacturers from developing safer products because of the duty to continually warn.

Plaintiff claims the trial court erred when it granted defendant's section 2—615 motion to dismiss plaintiff's negligent design claim as insufficient at law. Plaintiff contends the heater was defective because it was not designed to keep flammable vapors from close proximity to the pilot light, either by raising the height of the pilot light on the heater itself or by making a stand available so that the heavier-than-air flammable vapors might fall below the level of the pilot light.

We affirm the trial court's ruling.

To test the sufficiency of a complaint, a court must determine whether a party pleads facts sufficient to bring a claim within a legally recognized cause of action. (*Drobney v. Federal Sign & Signal Corp.* (1989), 182 Ill. App. 3d 471, 539 N.E.2d 186.) In any products liability action, a manufacturer has a nondelegable duty to produce a product that is reasonably safe. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 545, 301 N.E.2d 307; *Baltus v. Weaver Division of Kidde & Co.* (1990), 199 Ill. App. 3d 821, 829, 557 N.E.2d 580; *Phillips v. United States Waco Corp.* (1987), 163 Ill. App. 3d 410, 516 N.E.2d 670.) In

both strict liability and negligence actions regarding design, plaintiff must plead the existence of a defective condition in the product at the time it left the manufacturer's control. *Kokoyachuk v. Aeroquip Corp.* (1988), 172 Ill. App. 3d 432, 437, 526 N.E.2d 607; *Willeford v. Mayrath Co.* (1972), 7 Ill. App. 3d 357, 361, 287 N.E.2d 502.

This court has dismissed claims as substantially insufficient at law where plaintiff failed to plead a legally cognizable defect. *Fliszar v. Commonwealth Edison Co.* (1988), 173 Ill. App. 3d 770, 527 N.E.2d 1016 (products liability complaint dismissed for failure to plead a legally cognizable defect in electricity); *Curtis v. County of Cook* (1982), 109 Ill. App. 3d 400, 440 N.E.2d 942 (negligent design claim dismissed where complaint alleged no legally cognizable defect in sign posts); *Camp Creek Duck Farm, Inc. v. Shell Oil Co.* (1981), 103 Ill. App. 3d 81, 430 N.E.2d 385 (products liability counts dismissed where complaint alleged no legally cognizable defects in rat poison).

In order to prevail under a negligence theory, a plaintiff must plead that the quality of the product is "insufficient and that the duty of care on the part of the manufacturer required it to design something safer for the user." (*Kokoyachuk*, 172 Ill. App. 3d at 437, citing *Flaugher v. Sears, Roebuck & Co.* (1978), 61 Ill. App. 3d 671, 675, 378 N.E.2d 337.) An examination of plaintiff's complaint reveals no such allegations.

■ A plaintiff may establish such a negligence claim by pleading facts that show defendant deviated from the standard of care that other manufacturers in his industry followed at the time the product was designed, or by pleading facts that show defendant knew or should have known, in the exercise of ordinary care, that its product was unreasonably dangerous and defendant failed to warn of its dangerous propensity. *Baltus v. Weaver Division of Kidde & Co.* (1990), 199 Ill. App. 3d 821, 830, 557 N.E.2d 580, citing *Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 385 N.E.2d 690 (a strict liability case finding a design defect may be shown by the availability and feasibility of alternative designs at time of manufacture, or that design fails to conform to industry standards, or that it fails to meet design criteria of government regulations).

Similarly, the complaint does not allege that the damages resulting from the design are greater than would be contemplated by an ordinary consumer or user. See Restatement (Second) of Torts, §402A (1977); *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368; *Dunham v. Vaughan & Bushnell Manufacturing Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401; *Lease v. International Harvester Co.* (1988), 174 Ill. App. 3d 897, 529 N.E.2d 57.

A negligence theory does not permit liability without fault so a plaintiff must do more than simply allege a better design for a product; he must plead and present evidence of a standard of care by which to measure a defendant's design and establish a deviation from that standard. *Baltus*, 199 Ill. App. 3d at 831; *Ferentchak v. Village of Frankfort* (1985), 105 Ill. 2d 474, 480, 475 N.E.2d 822.

After alleging defendant's duty, plaintiff's complaint states:

"1.8. Notwithstanding the aforementioned duty of the Defendant, RHEEM MANUFACTURING CO., Defendant was then and there guilty of one of [*sic*] more of the following negligent acts or omissions:

a. The Defendant carelessly and negligently designed, manufactured, marketed and distributed a gas fired hot water heater;

1. With a constantly burning concealed flame which was open to the air;

2. With a flame located within six inches of the floor;

3. Which heater, by its very design and operation, created a draft toward the flame \*\*\*."

This is the only paragraph asserting the design defect although, in another paragraph, plaintiff alludes to a negligent manufacture of "designed height" of the pilot; however, this deals with knowledge to be imputed to the user for safe use.

■ Plaintiff in this case failed to plead facts alleging that other manufacturers designed heaters with any of the alternative safety features or designs that plaintiff set out in his complaint. Because plaintiff does not establish a standard of care by which to measure defendant's design, it cannot be determined by the pleadings whether defendant negligently manufactured a defective product because it did not conform to such a standard. In a complex products liability case such as this, we may not find defendant negligently designed the heater by simply relying on plaintiff's opinion. *Baltus*, 199 Ill. App. 3d at 831.

Because we recognize that possibly lagging industry standards should not allow a manufacturer to escape liability for negligent design, we examine whether plaintiff has sufficiently pleaded in the alternative that defendant knew or should have known, in the exercise of ordinary care, that its product was unreasonably dangerous and failed to warn of its dangerous propensity. *Baltus*, 199 Ill. App. 3d at 830.

The threshold question of unreasonably dangerous design is not whether the product could have been made safer, but whether it is

dangerous because it fails to perform in the manner reasonably to be expected in light of its nature and intended function. (*Baltus*, 199 Ill. App. 3d at 830; *Kokoyachuk*, 172 Ill. App. 3d at 438; *Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 638, 388 N.E.2d 964.) However, a manufacturer is not an insurer against all foreseeable accidents which involve its product, and the availability of an alternative design does not necessarily translate into a legal duty. *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 210, 384 N.E.2d 368; *Kokoyachuk*, 172 Ill. App. 3d at 438.

Just as plaintiff fails to plead facts establishing a standard that defendant knew or should have known of and disregarded, he has also failed to meet the alternative criterion by pleading facts that attribute knowledge to defendant at the time of manufacture that its product design was unreasonably dangerous for its intended function.

Plaintiff further failed to allege that the water heater malfunctioned or performed in any manner other than as reasonably expected or intended. It was actually functioning as intended when it provided a source of ignition for the gasoline fumes surrounding plaintiff. This court has found a manufacturer not liable, under both strict liability and negligence theories, where the product performs in the manner reasonably to be expected in light of its nature and intended function. *Kutzler v. A M F Harley-Davidson* (1990), 194 Ill. App. 3d 273, 550 N.E.2d 1236 (motorcycle with extra-wide gas tank not unreasonably dangerous since risk of being sideswiped by car is an obvious risk and the vehicle performed in the manner reasonably to be expected); *Taylor v. Gerry's Ridgewood Inc.* (1986), 141 Ill. App. 3d 780, 490 N.E.2d 987 (revolver not defective since discharge reasonably expected when trigger is pulled); *Van Dettum v. K mart Corp.* (1985), 133 Ill. App. 3d 861, 479 N.E.2d 1104 (automobile seat cover not defectively designed for its intended use where elastic snap back was common propensity); *Fuller v. Fend-All Co.* (1979), 70 Ill. App. 3d 634, 388 N.E.2d 964 (safety glasses without side shields were not defective where it was not reasonable to expect protection against particle side entry); *Flaugher v. Sears, Roebuck & Co.* (1978), 61 Ill. App. 3d 671, 378 N.E.2d 337 (table saw not defective without lock-in-place guard where inherent danger of hand slipping under floating guard was obvious and performance was as designed); *Murphy v. Cory Pump & Supply Co.* (1964), 47 Ill. App. 2d 382, 197 N.E.2d 849 (mower not negligently designed without guard in front of rotary blade where it functioned for the purposes for which it was designed).

To sum up our considerations on the issues of plaintiff's negligent design claim, we agree with plaintiff that the danger in this case is not open and obvious to most people, and there is a foreseeable likeli-

hood that a person might be injured if he brings flammable vapors into close proximity to the flame of the heater.

However, plaintiff failed to plead facts alleging that other manufacturers designed heaters with any of the alternative safety features or designs that plaintiff set out in his complaint.

Plaintiff also failed to plead any facts that allege that defendant had the ability at the time of manufacture to modify the design of the heater so that the danger of plaintiff's type of injury was eliminated without impairing the usefulness and efficiency of the heater or making it unduly expensive.

We do not suggest the plaintiff might not have pleaded a cause of action, but merely that he did not sufficiently plead facts to support a negligent design claim. (*Small v. St. Francis Hospital* (1991), 220 Ill. App. 3d 537.) Plaintiff should be allowed to file an amended complaint if he so desires.

Plaintiff next argues the trial court erroneously denied him leave to file a punitive damage count to his fourth amended complaint. The crux of the punitive damage claim relates to plaintiff's contention that defendant had a continuing and independent duty to provide warnings or instructions regarding the hazard of ignition of flammable vapors after the manufacture date of the product.

■ The trial court denied plaintiff leave to add a punitive damage count stating only that the motion did not comply with section 2—604.1 of the Illinois Code of Civil Procedure.

That section was enacted as part of the "tort reform" legislation enacted by the 83d General Assembly. The purpose of this section is to discourage the seeking and awarding of punitive damages by requiring a judicial determination that there is a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages. This provision, however, applies only to causes of action accruing after November 25, 1986. (Ill. Ann. Stat., ch. 110, par. 2—604.1, Historical & Practice Notes (Smith-Hurd Supp. 1991).) Since the heater was manufactured in 1966 and the accident injuring plaintiff occurred in 1982, the cause of action accrued prior to the effective date of section 2—604.1 and the section is not applicable in determining whether plaintiff is entitled to amend his pleadings with a punitive damages count.

Plaintiff's right to amend must rest upon section 2—616 of the Illinois Code of Civil Procedure relating generally to amendments. Ill. Rev. Stat. 1989, ch. 110, par. 2—616.

Apparently, the motion was offered on May 4, 1989, although the trial had been set for May 3 of that year. Plaintiff believed his amend-

ment still timely because defendant was allowed to file a late response as part of discovery in the case.

The granting of amendments is within the sound discretion of the trial court. *Adams v. Zayre Corp.* (1986), 148 Ill. App. 3d 704, 499 N.E.2d 678; *Bisset v. Joseph A. Schudt & Associates* (1985), 133 Ill. App. 3d 356, 478 N.E.2d 911; *Hazelwood v. Illinois Central Gulf R.R.* (1983), 114 Ill. App. 3d 703, 450 N.E.2d 1199.

A trial court's power to allow amendments should be freely exercised so that a party may fully present his causes of action, and the paramount consideration in the exercise of the court's discretion should be whether the amendment furthers the interest of justice. *Morris v. City of Chicago* (1985), 130 Ill. App. 3d 740, 474 N.E.2d 1274.

The difficulty in the case at bar is that the court failed to exercise its discretion in determining whether plaintiff should be allowed leave to amend his complaint. To be sure, the amendment comes at a late date in the proceedings and the court might reasonably deem it untimely. However, that decision ought to be made only in the context of the exercise of the court's discretion.

In suggesting that the plaintiff did not comply with section 2–604.1, the court indicated that it did not exercise its discretion in making a determination as to the propriety of plaintiff's amendment.

Since we will be returning this cause to the trial court, the court will have another opportunity to consider this under the appropriate provision in the Code of Civil Procedure.

In his sixth issue, plaintiff appeals the trial court's granting of defendant's motion to exclude evidence of remedial measures taken post-manufacture but pre-injury. Plaintiff alleges that Rheem began putting warning labels on the Fury heater in the mid-1970's, and in 1975 or 1976, manufactured an 18-inch stand available as an option to purchasers of the heaters. Plaintiff's brief indicated that he wished to use this evidence only as to defendant's negligence as to warnings and not as to feasibility of design. The trial court granted the motion and we uphold that ruling.

■ Generally, evidence of subsequent remedial measures is not admissible as proof of negligence, although it may be introduced as to feasibility of design. *Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 14, 541 N.E.2d 643; *Davis v. International Harvester Co.* (1988), 167 Ill. App. 3d 814, 822-23, 521 N.E.2d 1282; *Christopherson v. Hyster Co.* (1978), 58 Ill. App. 3d 791, 801, 374 N.E.2d 858.

Before *Schaffner* there was some question as to whether remedial measures could be introduced as proof of willful and wanton misconduct where the plaintiff sought punitive damages. *Schaffner* expressly corrected the appellate court in concluding that such evidence of remedial measures could not be used in determining whether defendant's conduct met the standards for willful and wanton misconduct. *Schaffner*, 129 Ill. 2d at 16-17; see *Schaffner v. Chicago & North Western Transportation Co.* (1987), 161 Ill. App. 3d 742, 754, 515 N.E.2d 298.

The appellate court in *Schaffner* appeared to be following the language of *Collins v. Interroyal Corp.* (1984), 126 Ill. App. 3d 244, 466 N.E.2d 1191, which allowed evidence of post-sale product modifications although there was testimony that the product was unreasonably dangerous and that such modifications were probative of a course of conduct which was willful and wanton. Even that case, however, acknowledged that post-manufacture or post-occurrence changes are not sufficiently probative of a manufacturer's prior neglect.

Generally, the relevant time period in a cause of action alleging the negligent manufacture of a product is the time of sale or manufacture. *Kempes v. Dunlop Tire & Rubber Corp.* (1989), 192 Ill. App. 3d 209, 218, 548 N.E.2d 644; *Collins v. Hyster Co.* (1988), 174 Ill. App. 3d 972, 977, 529 N.E.2d 303.

In *Millette v. Radosta* (1980), 84 Ill. App. 3d 5, 404 N.E.2d 823, a "recall letter" from an automobile manufacturer was allowed to be introduced into evidence. The court apparently allowed the letter to be received in evidence since it was not executed in connection with the accident. *Schaffner* leaves little doubt in this regard. The court believed post-sale remedial measures to be inadmissible because (1) correction of unsafe conditions should not be deterred by the possibility that such an act will constitute an admission of negligence and (2) a post-occurrence change is insufficiently probative of prior negligence since later carefulness does not necessarily imply prior neglect. *Schaffner*, 129 Ill. 2d at 14.

■ This policy is probably more compelling in the case before us. Since manufacturers mass produce items used commonly and extensively such as water heaters, snow blowers, power drills and other products, allowing evidence of pre-injury remedial measures would have a chilling effect on the incentive to improve safety in such widely used products.

We do not rule upon the question of whether these remedial measures might be introduced in a product liability case predicated upon a design defect and the feasibility of the development of a safe design. As we have previously noted, while plaintiff has failed to allege a

cause of action for negligent design, we have not determined that such a complaint might not be properly pled.

Prior to filing his fourth amended complaint, plaintiff filed a request for admission of facts on March 21, 1989. That request pertained to 15 claims against defendant that arose prior to plaintiff's injury, with most involving burns caused by the ignition of flammable vapors by a Rheem gas-fired water heater. Defendant subsequently filed two responses to the request, the first filed on March 29, 1989, and the second, with leave of court, at trial on May 15, 1989.

Plaintiff argues that the trial court (i) lacked discretion to allow a filing after 28 days, or (ii) in the alternative, abused its discretion since plaintiff would be unable to depose the relevant individuals regarding the claims prior to trial and was thereby prejudiced. We need not determine the first argument since it was an abuse of discretion to grant defendant leave to file the second answer.

Defendant's first response briefly and generally denied the relevance of the requests, relying on a ruling that there is no precedent in Illinois allowing post-sale, pre-occurrence evidence regarding a defendant's knowledge in a negligence action. Alternatively, defendant responded that even if the requests were relevant, they state insufficient facts, call for conclusions, and are overly broad. However, defendant's second answer to the same request was much more detailed; it admitted, denied and objected to specific facts within the 15 subparagraphs, thus giving plaintiff substantive answers.

Supreme Court Rule 216(c) provides that a party may serve on any other party a written request for the admission of the truth of any specified relevant fact set forth in the request. To avoid admissions of fact or the authenticity of proffered documents, the respondent must, within 28 days after service, return to the requesting party either (1) a sworn statement that specifically denied the matters of which admission is requested or details the reasons why the responding party cannot truthfully admit or deny the matters, or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part. Also, any objection to a request or to an answer will be heard by the court upon prompt notice of the party making the request. 134 Ill. 2d R. 261(c)

Our courts have not been consistent in their findings regarding a trial court's discretion to allow a tardy filing to a notice to admit. Some have waived the 28-day limitation by exercising "wide discretion" (*Bluestein v. Upjohn Co.* (1981), 102 Ill. App. 3d 672, 677-78,

430 N.E.2d 580) or "for good cause shown" (*Daleanes v. Board of Education* (1983), 120 Ill. App. 3d 505, 509, 457 N.E.2d 1382) or "where the failure to respond within the time provided is the result of circumstances beyond the control of the litigant" (*Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669, 678, 382 N.E.2d 95). *Johannsen v. General Foods Corp.* (1986), 146 Ill. App. 3d 296, 299, 496 N.E.2d 544.

Other courts, however, have suggested that a court is without discretion to allow a tardy filing after 28 days. *Koca v. Gavin* (1st Dist. 1990), 199 Ill. App. 3d 665, 557 N.E.2d 432 (6th Division); *Johannsen v. General Foods Corp.* (3d Dist. 1986), 146 Ill. App. 3d 296, 496 N.E.2d 544; *Bullock v. Adams* (1st Dist. 1981), 102 Ill. App. 3d 379, 430 N.E.2d 534 (3d Division); *Chapman v. Foggy* (5th Dist. 1978), 59 Ill. App. 3d 552, 375 N.E.2d 865; *Banks v. United Insurance Co.* (1st Dist. 1975), 28 Ill. App. 3d 60, 328 N.E.2d 167 (3d Division).

We need not wrestle with the dilemma since the court erred in allowing the second response (i) because it came after the 28-day period or (ii) in any event, it abused its discretion since plaintiff had relied on defendant's first response which admitted nothing substantive, in contrast with the second; and granting plaintiff the opportunity, on the day of trial, to depose witnesses scattered over the country did not cure the court's error.

Courts have also allowed a tardy filing to cure a previous improper or insufficient filing where such later filing served to prevent a serious injustice. *Sims v. Alton* (1988), 172 Ill. App. 3d 694, 526 N.E.2d 931; *Deboe v. Flick* (1988), 172 Ill. App. 3d 673, 526 N.E.2d 913.

Additionally, although defendant's first response of March 29, 1989, was unsworn and nonspecific, plaintiff failed to promptly raise objection as Rule 216(c) requires. ("Any objection to a request or to an answer shall be heard by the court upon prompt notice and motion of the party making the request." (134 Ill. 2d R. 216(c)).) Since a party waives on appeal an issue he failed to properly raise in the trial court, we find defendant's first answer stands as a valid response.

Plaintiff next claims that industry standards for installers promulgated by the American National Standard Institute (ANSI) should be admitted as relevant to the issue of foreseeability regarding a breach of a duty to warn and a breach of a duty to design a safe product. We disagree and affirm the trial court's exclusion of standards intended for installers.

 Evidence of standards promulgated by industry, trade or regulatory groups or agencies may be admissible to aid the trier of fact in determining the standard of care in a negligence action. While the standards do not have to be imposed by a government or regulatory agency to be admissible, they must be relevant "in terms of both time and conduct involved." *Ruffiner v. Material Service Corp.* (1987), 116 Ill. 2d 53, 58, 506 N.E.2d 581; *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 84, 368 N.E.2d 1299.

Plaintiff argues that defendant knew or should have known of the standards for installers that included an ANSI requirement that the pilot light of a gas-fired heater installed in a commercial garage be 18 inches off the floor. Plaintiff claims this standard establishes that defendant knew or should have known of the increased risk of danger when a pilot light is closer to the ground and also establishes the feasibility of attempting to alleviate the danger by selling an 18-inch stand for the heater.

 We find the installers' standards were properly excluded as irrelevant to defendant's conduct at the time of manufacture. In *Ruffiner*, plaintiff was injured when he fell from a ladder on the movable pilot house of a towboat. The court excluded as irrelevant ANSI standards applicable to fixed ladders. While the goal of the ANSI standards is safety, the court found the different types of activity associated with fixed and movable ladders too variant to apply the same standards to both.

Other cases have examined whether certain standards were relevant in terms of time and conduct: *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534 (Federal standards concerning construction of liquified petroleum gas tank cars admissible in action based on explosion of such a tank car); *Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 385 N.E.2d 690 (no error in admitting conflicting testimony regarding applicability of certain standards to forklift trucks); *Murphy v. Messerschmidt* (1977), 68 Ill. 2d 79, 84, 368 N.E.2d 1299 (construction standard properly excluded as evidence when not established that it was in effect at time of construction); *Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93 (regulation governing location of gasoline fill pipes at service station admissible in action based on explosion occurring in delivery of gasoline to station); *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 273 N.E.2d 809 (State standards concerning railway crossings admissible in action based on accident at railway crossing); and *Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139, 437 N.E.2d 376 (stand-

ards applicable to headgear used for vehicular crashes properly excluded in action for injuries caused by allegedly defective football helmet).

In the case at bar, our comparison is not as narrow as the one before the *Ruffiner* court. Here, we are not asked to apply a standard for one product to a similar product. Rather, plaintiff asks us to apply the standards of one trade or industry to a different trade or industry, and we decline to do so. While we do not maintain that such an imposition could never occur, the standards for installers in this case is simply not relevant to the conduct or standard of care of defendant at the time of manufacture.

Plaintiff also argues that defendant waives its objection to the introduction of installers' standards due to the fact that the heater in question wore a label stating "Conforms with National Safety Requirements." Plaintiff contends that the label introduces the issue of safe operation of the heater, so the standards are admissible. Because there is no evidence that this label is relevant to installers' ANSI standards, we find that it cannot operate as a knowing waiver of objections to the introduction of those standards.

■■ Finally, plaintiff claims that prior to and during the manufacture of the Fury heater in 1966, employee John Streisel worked in the research and development division of defendant's company and had prior personal experience regarding the dangers involved in this case which the trial court erroneously refused to impute to defendant. Plaintiff claims it was Streisel's duty to make sure that the gas-fired heaters were designed, manufactured and marketed in as safe a manner as possible, and that his prior knowledge should be imputed to find defendant negligent. We affirm the trial court's granting of defendant's motion *in limine* to exclude evidence of Streisel's prior knowledge.

The record does not indicate whether Streisel was employed by defendant at the time of development of the product.

Since this case is being returned to the trial court for further proceedings, the court will be expected to conduct an examination of the witness outside the presence of the jury to determine whether he was an employee of defendant in 1966 (if not, the matter ends there).

Plaintiff accurately states that knowledge gained by an employee in the course of his employment may generally be imputed to the employer. Further, knowledge that an employee gained prior to his employment may sometimes be imputed to the employer under certain circumstances, for instance, where it is clear that the infor-

mation or knowledge obtained by the employee at a prior time is so precise and definite that it must be present in the employee's mind at a later time. See, *e.g., Greer v. Carter Oil Co.* (1940), 373 Ill. 168, 172, 25 N.E.2d 805; *Booker v. Booker* (1904), 208 Ill. 529, 542, 70 N.E. 709.

Defendant argues the trial court properly excluded any reference to Mr. Streisel's experience in the 1950's, prior to his beginning employment with defendant in 1974, when the flame of his personal water heater ignited a small flash fire of gasoline fumes while he was using gasoline to wash car parts in his basement. Defendant contends that Mr. Streisel's employment began eight years subsequent to the 1966 manufacture of the subject water heater; therefore, his personal experience had no relevance to this case and any knowledge could not be attributable to defendant at the time of manufacture in 1966. Defendant argues plaintiff's counsel was aware of this fact through Mr. Streisel's discovery deposition, which is not part of the record on appeal.

While we do not have Mr. Streisel's deposition in the record to examine, plaintiff does not address defendant's rebuttal in his reply brief, so we have no further benefit of plaintiff's argument. We must assume the trial court has heard the evidence supplied here, including the evidence in Mr. Streisel's deposition, and we therefore uphold the trial court's ruling.

Accordingly, we affirm in part and reverse in part and remand for a new trial.

Affirmed in part; reversed in part and remanded.

RIZZI and TULLY,* JJ., concur.

---

*Justice White originally heard oral argument in this case prior to his retirement. Justice Tully was substituted and has reviewed the record, briefs and audio recording of the oral argument.